[Civ. No. 2041.   Third Appellate District.—October 28, 1919.]

## GUS C. MARTIN, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE—COLLISION AT RAILROAD CROSSING—ACTION FOR DAMAGES FOR PERSONAL INJURIES—VERDICT—EVIDENCE.—In this action for damages for personal injuries received in a collision between the automobile in which the plaintiff was riding as a passenger and a gasoline motor-car operated on the line of the defendant company, the jury were warranted in coming to the conclusion that the motor-car was being driven at an illegal, excessive, and dangerous rate of speed, especially under the circumstances that it was passing a line of freight-cars that had been broken to permit the passage of pedestrians and vehicles, where no flagman was stationed, which fact contributed to and brought about plaintiff's injury.

[2] ID.—ERROR IN JUDGMENT BY CHAUFFEUR—CONTRIBUTORY NEGLIGENCE OF PASSENGER.—The fact that the chauffeur who had sole control and operation of the automobile in which plaintiff was riding as a passenger may have erred in judgment in its movement does not charge the plaintiff with contributory negligence where it appears that he had done what he was reasonably expected to do to safeguard his own person. The law relating to the contributory negligence of drivers of automobiles and other vehicles does not apply to passengers.

[3] ID.—IMPROPER INSTRUCTION.—In such an action an instruction "That if you find the defendant, or any of its employees, was or were negligent in handling the said motor which caused the accident, yet, if you further find that the accident could have been prevented if the plaintiff had caused the said automobile to stop at any time before it reached the track upon which

2. Negligence of driver as imputable to occupant of automobile, notes, Ann. Cas. 1916E, 268; L. R. A. 1915B, 953.

the said motor-car was running at a place where said motor could have been seen or heard by the plaintiff or the driver of said automobile, your verdict shall be for the defendant," overlooks the facts that the plaintiff was a passenger, not exercising any control or management over the automobile, which was in charge of a competent chauffeur, and therefore was properly refused.

[4] ID.—CONCURRENT NEGLIGENCE OF DEFENDANT AND CHAUFFEUR—RIGHT TO RECOVER AGAINST BOTH.—If the defendant in such action was negligent, and that negligence entered into and co-operated with the negligence of the chauffeur of the motor-car in which the plaintiff was riding, in which the plaintiff did not participate, the plaintiff was entitled to recover judgment against both the defendant and the chauffeur.

[5] ID.—PLEADING—INSUFFICIENT COMPLAINT—OMISSION CURED BY ANSWER.—Where the complaint in an action for damages for personal injuries against a railroad company omitted to charge negligence on the part of the company, it only alleging negligence on the part of the employees of the defendant, but the answer sets forth all the matters omitted from the complaint, the defendant cannot on appeal be heard to say that it has suffered any injury by reason of the ruling of the trial court in not sustaining its demurrer to the complaint, particularly where the demurrer interposed did not call attention to the defect.

APPEAL from a judgment of the Superior Court of Tehama County. John F. Ellison, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. T. Matlock, George R. Freeman and Frank Freeman for Appellant.

William A. Fish and Walter H. Linforth for Respondent.

PLUMMER, P. J., *pro tem.*—On the fifth day of February, 1917, the plaintiff and one Clyde H. Vincent were traveling eastward in an automobile on Oak Street, in the city of Red Bluff, county of Tehama, and, in so doing, reached a point on said street crossed by the tracks of the defendant . company. There a collision occurred with a gasoline motor-car being propelled northward on the tracks of said company, in which collision Vincent was killed and the plaintiff seriously injured. Plaintiff brought suit to

4. Liability for injury to automobile passenger, notes, 21 L. R. A. (N. S.) 81; 35 L. R. A. (N. S.) 658.

recover for the losses incurred.   The action was tried before a jury.   A verdict was rendered for seven thousand five hundred dollars, and from the judgment entered thereon, and the order denying defendant's motion for a new trial, defendant prosecutes this appeal.

It appears from the evidence that on the morning of the day in question the plaintiff, then being at the town of Corning, about twenty miles south of Red Bluff, engaged the services for hire of the said Clyde H. Vincent to transport him by automobile to the town of Red Bluff. The automobile was a five-passenger car, owned by the said Vincent, and was at all times on said trip operated and managed by him alone.   The plaintiff occupied a seat alongside of, and to the right of, Vincent.   It appears to have been a perfect spring morning,—no wind and no rain. Oak Street, in the city of Red Bluff, is in the heart of the city, and was a street with which the chauffeur Vincent was entirely familiar.   The plaintiff had never crossed the railroad tracks at Oak Street, knew nothing of the conditions thereof, and was not aware of the fact that a motorcar was at any time being operated on the lines of the defendant.

Some forty minutes preceding the collision in question, a live freight train had been sidetracked in the city of Red Bluff to the westward of the main line belonging to the defendant, and cut in two and separated for a distance of some forty feet at Oak Street, for the purpose of allowing pedestrians and vehicles in the neighborhood passage across the tracks belonging to the defendant company.   As the plaintiff and Vincent were proceeding easterly along Oak Street they observed the freight train, constituting two sections, as aforesaid, one section being to the south and the other to the north of Oak Street, the ends of the two sections projecting out over Oak Street, leaving a trifle more than one-half of said street unobstructed.   When within about twenty-five feet of the tracks of said company, the chauffeur Vincent brought the automobile to a temporary stop, and looked in both directions to determine whether there was any approaching trains, the plaintiff likewise, on his own behalf, making such observations as he found possible under the circumstances.   The approach of the motor-car not being observed, and neither sound of

whistle nor ringing of bell being heard, the automobile was sent forward by the chauffeur in second speed at a rate of about five miles per hour, turning in its course slightly northward, where it appears to have suddenly increased its speed, until it reached the main line on which a gasoline motor-car was moving northward, at which point the collision occurred. The automobile was lifted some three feet from the ground, and hurled in a northerly direction a trifle over thirty feet, and wedged under one of the cars of the freight train in such a manner that it required the service of the engine of the freight train to pull the automobile from underneath the freight-car. The occupants were rendered unconscious, and the plaintiff suffered severe injuries. It may be here stated that no point is made as to the amount of the judgment being excessive.

It is strongly contended by the appellant that the evidence is insufficient to support the verdict of the jury, that its preponderance is in favor of the defendant, and that for this reason a new trial should be granted herein. Other points are made upon this appeal, which will be subsequently noticed, but which appear to be only minor reasons urged in support of this appeal.

It is contended by the plaintiff and respondent that the motor-car was traveling at a very high rate of speed, from twenty-five to thirty-five miles an hour. On the part of the defendant it is contended that the car was running at only eight miles per hour. It was admitted during the course of the trial that the legal rate of speed within the city limits of the city of Red Bluff was eight miles per hour. It is also contended by the plaintiff that by reason of the train of cars situated as aforesaid, the approach of the motor-car could not be observed at any considerable distance away. On the part of the defendant it is insisted that the motor-car could have been seen at a point 150 feet north of the intersection of the company's lines with Oak Street from the point where plaintiff testifies the automobile was temporarily stopped to make observations of approaching trains and that from this point the motor-car moved only at a speed of eight miles per hour, and that had the plaintiff used reasonable diligence to discover the approach of the motor-car, a sufficient opportunity was offered, after passing through the opening of the broken freight train, to

stop the automobile before it reached the main line. On the part of the plaintiff it is contended that the freight train was sidetracked on a line parallel and next adjoining the main line on which the motor-car was operated. On the part of the appellant it is as strongly insisted that the freight train was sidetracked upon a line next westerly of the one claimed by the plaintiff, and that there was a vacant sidetrack, called track No. 3, between the switch occupied by the freight train and the track called the main line, on which the motor was traveling.

If the contention of the plaintiff is true, there would have been but a trifle over three feet between the overhang of the freight-cars on the company's sidetrack and the motor-car traveling on the main line. Under these conditions it scarcely seems possible that the automobile could have been lifted and hurled northward, as the physical facts show to have been the case, but in all probability it would have been taken up and practically ground to pieces between the two cars. The testimony of the witnesses, and the photographs of the car introduced in evidence, show that only the front portion of the automobile was seriously injured, the right front wheel, fender, etc., being knocked to pieces, the left fender being also torn and bent backward. The remainder of the car, which in width is greater than the distance would have been between the overhang of the motor-car and the freight-car in such a position, escaped practically uninjured. The plaintiff and Vincent were also hurled free from the automobile, and lay stretched on the ground near some object not identified by the witnesses, but apparently similar in size to an appliance used for throwing a switch.

The defendant maintains and operates, or did on the fifth day of February, 1917, maintain and operate six parallel tracks crossing Oak Street, the main track on which the motor-car was running being track No. 4, counting from the west.

After a careful reading of the testimony by the respective witnesses, and consideration of the physical facts and circumstances attending the collision, it seems to us more probable that the freight train was in fact standing on the track called No. 2, being the second track, and not the first track west of the main line. Basing its argument upon

the correctness of this contention, appellant claims that the plaintiff had ample opportunity to save himself from injury by the use of due diligence after crossing the track upon which the freight train was then standing. That, if necessary so to do, he could have leaped from the moving auto. The plaintiff testified, and it is also established by the witness himself, that a vehicle drawn by a horse preceded the auto through the opening made by the freight train and across the tracks of the company, at a distance of about 150 feet in advance of the auto. The driver of the vehicle testified that there was no flagman at the intersection, and no one was standing there to give warning of the approach of the motor. The plaintiff likewise testifies to the same state of facts. The brakeman of the freight train testifies that at this particular time he was engaged in adjusting a coupler upon a section of the train immediately north of Oak Street. That he stepped out and gave a signal to the occupants of the motor-car to stop, but they passed him without paying any heed. This brakeman also testifies that the south section of the freight train had been started northward, and had come to a stop. The fireman of the freight train testifies that he had a violent stop signal from the brakeman at about the instant of the collision, which would indicate that the brakeman was in error as to his giving signals or doing anything to attract the attention of the occupants of the automobile, and that the signals were given to stop his train after the occurrence of the accident.

A number of witnesses gave what is called "negative testimony," in that they testified that they saw the approaching motor-car, but heard neither bell nor whistle. On the other hand, the engineer and fireman of the freight train, and the motorman on the motor-car, testified as to the sounding of the whistle and the ringing of a bell by the approaching motor. Upon this question the testimony is in sharp conflict, but from the fact that one part of the testimony is positive and the other is negative, the jury might very well have concluded that the whistle was sounded and that the bell was rung. Without the opportunity of observing the witnesses on the stand, it appears that the testimony predominates in favor of the contention that the whistle was sounded and the bell rung. But as the opportunity for judging the credibility of the witnesses cannot be had by

the appellate court, it cannot be said that there was no substantial evidence to support the conclusion of the jury, assuming that their verdict turned wholly upon this point.

But there is a further circumstance involved in this case, which doubtless caused the jury and justified them in coming to the conclusion which they reached, even though they may have believed that the contended for signals were given. The complaint alleges that the motor-car was driven at an excessive rate of speed. As heretofore stated, the admitted legal rate of speed was eight miles per hour. The engineer and fireman of the freight train testified that the motor passed the engine upon which they were standing at eight miles per hour. The motorman in charge of the car says his speed after reaching the city limits was only eight miles per hour. The conductor on the motor-car likewise testified to a speed of eight miles per hour. His testimony, however, was based upon his knowledge of the city ordinances, as illustrated by the following questions and answers: "Q. When you reached the town limits you came along, you say, about eight miles an hour? A. Yes. That is a city ordinance. Q. You haven't any independent recollection of what rate you ran this morning, have you? A. No, sir." The schedule made by the motor on the morning in question, from Corning to Red Bluff, shows that it was traveling in the neighborhood of thirty miles per hour. A passenger upon the motor-car stated that there was no perceptible diminution of speed upon reaching the city limits, and not until after the collision had occurred. Other disinterested witnesses testified that the motor was traveling at a high rate of speed. It was admitted upon the trial that a motor car traveling under like conditions, at a rate of twenty-five miles per hour, could be stopped in one hundred feet. The motorman on the motor-car testified that his brakes held for sixty-five feet after the collision; that his brakes then ceased to hold, and his car coasted before coming to a stop northward to a point some four hundred feet from the scene of the accident. If it be true, as testified by the motorman, that his brakes on his motor-car held for sixty-five feet, and it be also true, as it was admitted to be true, and must be accepted to be true, that the motor-car under the conditions then traveling could be stopped in one hundred feet when traveling at a speed of twenty-five

miles an hour, then the jury had a right to conclude that it was not true that the motor-car at the time of the accident, or at any time preceding the accident after it entered the yards at Red Bluff, was traveling at a rate of speed not in excess of eight miles per hour.

For purposes of illustration, the distance within which an automobile may be stopped traveling at different rates of speed, as published in trade journals, may be useful. It is there stated that an automobile traveling ten miles per hour can be stopped in nine and two-tenths feet; that the same automobile under the same conditions traveling at twenty-five miles per hour can be stopped in fifty-eight feet. In other words, the added momentum to a moving vehicle by doubling or tripling the speed is such that it requires about six times the distance to stop an automobile running twenty-five miles per hour that it does to stop the same car when only running ten miles per hour. These laws are not peculiar to automobiles. They apply to every moving body, and if the force applied to a moving motor-car traveling twenty-five miles per hour can stop it in one hundred feet, the same force applied to the same car when traveling only ten miles per hour would stop it in a trifle over sixteen feet. A somewhat shorter distance would suffice if the car were only traveling eight miles per hour. Then again the force with which the automobile was picked up and hurled northward was such as to reasonably lead the jury to the conclusion that the theory that the motor-car was only traveling eight miles per hour had, in fact, as the conductor said, nothing to support it, except that the ordinances of the city of Red Bluff limited the speed to that rate. From this it is clear that the jury had ample evidence before it to conclude that the motor-car was being operated at an illegal rate of speed.

Then, again, it enforces another conclusion. The first four or five cars of the south section of the freight train *against* the south line of Oak Street were gondola-cars. The next four or five cars were ordinary box freight-cars. Hence, if the speed materially exceeded eight miles per hour from the point where Vincent stopped his automobile to take observations, it was not possible for the plaintiff to have seen the on-coming motor-car, as it would have been south of the line of visibility. All the testimony as to the

visibility of the approaching motor-car was based upon the assumption that its speed was only eight miles per hour, which assumption the jury could not have accepted without ignoring the circumstances and matters above set forth. We are thus brought to the conclusion that the jury had sufficient evidence to find that the defendant's motor-car was being driven at an illegal rate of speed, and that this fact contributed to and brought about plaintiff's injury.

There was some further testimony as to the speed of the respective cars, which may be mentioned. One or two members of the train crew testified that the automobile was moving twenty-five miles per hour, while the motor-car was traveling only eight. It is only necessary to say that if such had been the case, there would have been no collision, as the automobile would have passed by long before the arrival of the motor-car.

Could the plaintiff have saved himself by leaping from the moving auto? Possibly so, but we have been pointed to no authority holding that passengers on autos or other vehicles are required at their peril to think quick enough to take this method of escaping injury resulting from another's negligence. The plaintiff was not in control of the automobile in which he was riding. It is barely possible that if he had displaced Vincent in the control of the car, and operated the levers, the accident might have been avoided. Again, we are not presented with any authorities holding that such a course is necessary.

[1] The jury were warranted in coming to the conclusion that the motor-car was being driven at an illegal, excessive, and dangerous rate of speed, and this especially so under the circumstances that it was coming down past a line of freight-cars that had been broken to permit the passage of pedestrians and vehicles, where no flagman was stationed; [2] and the fact that the chauffeur who had sole control and operation of the car may have erred in judgment in its movement does not charge the plaintiff, a passenger on the auto, with contributory negligence, where it appears that he had done what he was reasonably expected to do to safeguard his own person.

A large number of authorities have been cited by counsel for the appellant, relating to the contributory negligence of drivers of automobiles and other vehicles, and it has

been argued that the same rule applies to passengers. Such, however, is not the law in this state, and no useful purpose can be served by going over the long list of cases in appellant's brief upon this phase of the controversy.

The learned trial judge denied the motion for nonsuit, and based his ruling upon three cases decided in this court, and we agree with him that, under the facts shown in this case, they are decisive of the issues here involved. The three cases relied upon are: *Druillard* v. *Southern Pacific Co.,* 36 Cal. App. 447, [172 Pac. 405]; *Ilardi* v. *Central Traction Co.,* 36 Cal. App. 488, [172 Pac. 763]; and *Ellis* v. *Central Traction Co.,* 37 Cal. App. 390, [174 Pac. 407].

All of these cases establish the law relating to the obligation or duty resting on a passenger so clearly that restatement is unnecessary. We do not understand that appellant questions the correctness of any of these decisions, but only contends that the rule applicable to Vincent, under the circumstances narrated, likewise applies with the same binding force and effect to the plaintiff in this action, and if its contention in this particular is not correct, its conclusion is also erroneous.

The instructions given to the jury by the trial court appear to have been prepared with great care, and so presented as to state the law with unusual clearness, and, in fact, so directly and precisely that appellant, in his assignment of errors on this branch of the case, only refers thereto by numbers, specifying that they were along the line of the three cases above referred to, and the refused instructions were refused or modified because they were not applicable to a passenger. Under such circumstances it has been frequently decided that an appellate court is not called upon to look for errors. We have, however, read every instruction given, and every instruction asked by the defendant and refused, and find no error in the action of the court. **[3]** As stated by appellant, one instruction asked for, to wit, instruction No. 16, and refused by the court, illustrates all the contention made by the appellant in relation to the instructions given or refused by the court. The asked instruction is as follows: "That if you find the defendant, or any of its employees, was or were negligent in handling the said motor which caused the accident, yet, if you further find that the accident could have been prevented if the

plaintiff had caused the said automobile to stop at any time before it reached the track upon which the said motor-car was running at a place where said motor could have been seen or heard by the plaintiff or the driver of said automobile, your verdict shall be for the defendant." This instruction entirely overlooks the fact that the plaintiff was a passenger; that the plaintiff was not exercising any control or management over the motor-car; that a competent chauffeur was in charge thereof, and that the plaintiff was only charged as a passenger, and not as a person in charge of a motor vehicle; [4] and that if the defendant was negligent, and the negligence of the defendant entered into and co-operated with negligence of the chauffeur, in which the plaintiff did not participate, then the plaintiff was nevertheless entitled to recover, because if the plaintiff were injured by the joint wrong of two persons, he could have prosecuted his action against both of them.

[5] After presenting all the questions which we have heretofore considered, the appellant, in its reply brief, urges the insufficiency of the complaint to state a cause of action, stating its contention in the following manner: "A far more important question is, however, whether, on the face of the complaint, defendant was guilty of negligence at all." It may be that technical construction was once more important than substantial facts, but under our reformed procedure we are not ready to accept unquestioningly any such statement. The point made by the appellant is that, in technical language, the defendant is not charged with negligence; that when so construed it only alleges negligence on the part of its employees. The complaint in paragraph I alleges the corporate existence of the defendant, and that it was engaged as a common carrier operating a railroad in the state of California, and through the city of Red Bluff, at the time of the injury of the plaintiff. That "the employees of the defendant ran one of its motor-cars in a northerly direction along its railroad and across said highway at a great rate of speed . . . the defendant's employees omitted to give any signal or warning of its approach to said crossing. The employees of said defendant had just prior to the time herein referred to, left certain freight-cars upon the track of said defendant west of and adjoining the track upon which said motor-car was approaching and ex-

tending along said track in such a manner as to almost completely block the crossing at Oak Street, and to prevent either the said Clyde H. Vincent or this plaintiff, as the said automobile approached said crossing, from obtaining a view of said motor-car approaching said crossing, as aforesaid. As said automobile reached said crossing, said motor-car, by reason of its negligent operation by the employees of the defendant, in the manner aforesaid, and by reason of the high rate of speed at which it was being run, by the employees of the defendant, and without any negligence whatever on the part of plaintiff or said Clyde H. Vincent, struck the automobile driven by said Clyde H. Vincent, and in which the plaintiff was riding as such passenger as aforesaid, causing said automobile to be demolished, killing the said Clyde H. Vincent and injuring the plaintiff in the manner hereinafter stated.''

It may be admitted that technically and abstractly the defendant is not charged with negligence, and that its employees only are so charged. The appellant has, under the authorities hereafter ' cited, completely obviated this objection, if it be such. Paragraph II of the defendant's second answer alleges the necessary matter to help out the complaint, thus: ''That the said approaching motor-car was in plain view of plaintiff and the said Vincent, had they looked in the direction from which it was approaching said crossing, and that said motor-car was in full control of *defendant's employees,* and was approaching the said railroad crossing carefully, and with due regard to the rights of persons approaching said crossing, and that defendant's employees in charge of said approaching motor-car gave, as required by law, suitable and proper signals of the approach of the said motor-car to the said crossing, etc.''

In *Daggett* v. *Gray,* 110 Cal. 172, [42 Pac. 569], the supreme court says: ''The rule is well settled that a complaint which lacks the averment of a fact essential to a cause of action may be so aided by the averment of the fact in the answer as to uphold a judgment thereon, even though a demurrer to a complaint for the want of this fact had been erroneously overruled.''

To the same effect is *Kreling* v. *Kreling,* 118 Cal. 420, [50 Pac. 546]; also *Shively* v. *Land & Water Co.,* 99 Cal. 261, [33 Pac. 848]; *Nolan* v. *Fidelity & Deposit Co.,* 2 Cal.

App. 3, [82 Pac. 1119]; *Slaughter* v. *Goldberg, Bowen & Co.*, 26 Cal. App. 318, [147 Pac. 90].

From the fact that the defendant was not deceived or misled by reason of the omission in the plaintiff's complaint, and also from the further fact that it specifically alleges the omitted matter, it would seem that section 475 of the Code of Civil Procedure, and section 4½ of article VI of our state constitution, would apply to this case and prevent any reversal on account of any such alleged defect in the pleadings. The demurrer interposed by the appellant does not call attention to the alleged defect, the first specification being a general demurrer. The second is as follows: "It appears upon the face of the complaint that said complaint does not state a cause of action, in this, first, the collision described in the complaint which resulted in the injuries of the plaintiff on February 5, 1917, etc." Without any specification whatever that the negligence set forth in the complaint is not directly charged to have been the negligence of the appellant, rather than its employees.

However, the following cases hold that to charge the ownership of the motor by the defendant and its operation by its employees establishes *prima facie* that the car was run by the defendant: *McWhirter* v. *Fuller*, 35 Cal. App. 288, [170 Pac. 417]; *Grantham* v. *Ordway*, 40 Cal. App. 733, [182 Pac. 73]; *Ferris* v. *Sterling*, 214 N. Y. 253, [Ann. Cas. 1916D, 1161, 108 N. E. 406]; *Birch* v. *Abercrombie*, 74 Wash. 486, [50 L. R. A. (N. S.) 59, 133 Pac. 1050]; *Trabing* v. *California Nav. & Imp. Co.*, 121 Cal. 137, [53 Pac. 644].

A review of these cases and a number of others cited in the briefs would justify the court in holding that the complaint is sufficient, even though, for purposes of clearness, the pleading would have been better had the negligence been charged in the form claimed to have been necessary by the appellant.

In any view of the case the appellant, having in its answer set forth all the matter omitted from the complaint, it cannot be heard to say that it has suffered any injury by reason of the ruling of the trial court in not sustaining its demurrer, and not having suffered any injury, a reversal for this cause would not be warranted under the provision of our state constitution above referred to.

Being of the opinion that there was sufficient evidence to warrant the verdict of the jury, and not having been pointed to any errors sufficient to justify a reversal, the judgment of the trial court is hereby affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 22, 1919.

All the Justices concurred, except Melvin, J., who was absent.