[Civ. No. 5484. First Appellate District, Division One.—January 27, 1927.]

KATHÉRINE C. OLES, Appellant, v. KAHN BROS. (a Corporation) et al., Respondents.

[1] TRIAL—NONSUIT—SUFFICIENCY OF EVIDENCE.—A motion for nonsuit should be denied when there is any evidence to sustain plaintiff's case, without passing upon the question of its sufficiency, or as to whether the court believed it or not.

[2] ID.—EVIDENCE SUSCEPTIBLE OF TWO CONSTRUCTIONS—DISREGARD OF CONTRADICTORY EVIDENCE.—Upon motion for nonsuit, the material facts which the evidence tends to prove must be assumed to be true, and if the evidence is fairly susceptible of two construc-

---

1. See 9 Cal. Jur. 557.

tions, the court must take the view most favorable to plaintiff and if contradictory evidence has been given, it must be disregarded.

[3] NEGLIGENCE — INJURIES TO PATRON OF LUNCH-COUNTER MAINTAINED IN DEPARTMENT STORE—EXISTENCE OF KNOWN DANGER—EVIDENCE.—In an action for damages against the owner of a department store as lessor of a lunch-counter maintained therein for injuries sustained by a customer, who, after arising from a stool at the lunch-counter, stumbled on the uneven platform to which the stool was fastened, the issue as to whether plaintiff observed the unevenness of the platform and had knowledge of the existence of the danger at the time of stepping thereon was for the jury.

[4] ID. — KNOWLEDGE OF DANGER — FINDINGS. — In such action, the mere fact that plaintiff saw the platform when she stepped upon it did not warrant the court in finding, as a matter of law, that plaintiff knew, or should have known, of the existence of the unevenness in the surface of the platform.

[5] ID. — CARE — CONTRIBUTORY NEGLIGENCE — EVIDENCE. — In such action, even though plaintiff's testimony was susceptible to the construction that she did observe the unevenness of the platform on ascending it, the question as to whether her failure to keep such element of danger in mind while arising from the stool and leaving the platform constituted want of ordinary care was for the jury.

[6] ID. — PATENT DEFECT — EVIDENCE. — In such action, the question whether the unevenness of the platform rendered it unsafe and dangerous, and, if so, whether, under the circumstances adduced, its dangerous and unsafe condition was patent to plaintiff was for the jury to decide.

[7] ID. — PLEADING — FACTS CONSTITUTING NEGLIGENCE — ANSWER — ISSUES.—In such action, although the complaint did not set out the fact of negligence, or facts constituting negligence, the court was not justified in granting a nonsuit, where the defects in the complaint were rendered harmless because of defendants' answer, which tendered the issue of the alleged defective and unsafe condition of the platform, and the trial proceeded upon that issue.

[8] ID.—PLEADING—PROXIMATE CAUSE—ISSUES RAISED BY ANSWER.—Where a complaint is defective in that it does not expressly allege that the negligence of defendant was the proximate cause of the injury, but such issue is raised by the answer and the case is fairly tried upon the merits and under circumstances indicating that nothing in the pleadings misled defendant to his injury, the defect becomes immaterial.

[9] ID. — CONTROL OF LEASED PREMISES — LIABILITY OF LESSOR—EVI-
DENCE—QUESTION FOR JURY.—In an action against the owner of
a department store as lessor of a lunch-counter maintained
therein for injuries sustained by a customer, who, after arising
from a stool at the lunch-counter, stumbled on the uneven plat-
form to which the stool was fastened, the question as to whether
the lessor retained sufficient control over the conduct of the lunch-
counter to connect it with liability for any injuries proximately
caused by the defective condition of the platform was for the
jury.

[10] ID. — INTEREST OF LESSOR—EVIDENCE.— In such action, the trial
court erred in sustaining an objection to the admission in evi-
dence of a menu used at the lunch-counter on which the name of
the department store was printed, plaintiff being entitled to
such proof as a circumstance tending to show that the department
store had an interest in the lunch-room beyond that of a mere
lessor.

[11] ID. — LIABILITY OF LESSOR — CARE — EVIDENCE.—In such action,
where it was shown by the evidence that the lessor's interest in
the lunch-room was a financial one only, and that it retained a
certain amount of control over the conduct of its business with
regard to employees, quality of goods, and prices, and as to the
location, style, arrangement, color, and construction of fixtures,
the lessor owed to patrons of the lunch-counter the duty of using
reasonable and ordinary care to keep the premises in a safe and
suitable condition so that they would not be unnecessarily or un-
reasonably exposed to danger.

[12] ID.—CUSTOMER OF DEPARTMENT STORE—INVITEES—LIABILITY OF
STOREKEEPER—CARE.—A person who enters a store during busi-
ness hours to purchase goods does so at the implied invitation of
the owner, upon whom the law imposes the duty of exercising
ordinary care and prudence to keep aisles and passageways, in
and through which a customer in making purchases is induced to
go, in a reasonably safe condition, so as not to expose the cus-
tomer to danger or accident.

---

(1) 38 **Cyc.**, p. 1558, n. 25.   (2) 38 **Cyc.**, p. 1553, n. 90, p. 1558,
n. 27.   (3) 29 **Cyc.**, p. 640, n. 16.   (4) 29 **Cyc.**, p. 640, n. 16.   (5)
29 **Cyc.**, p. 641, n. 18.   (6) 29 **Cyc.**, p. 637, n. 87, p. 640, n. 16.
(7) 29 **Cyc.**, p. 570, n. 16; 38 **Cyc.**, p. 1560, n. 44 New.   (8) 29
**Cyc.**, p. 573, n. 43 New; 31 **Cyc.**, p. 715, n. 57.   (9) 36 **C. J.**, p. 254,
n. 54.   (10) 36 **C. J.**, p. 252, n. 28.   (11, 12) 36 **C. J.**, p. 243, n. 90;
29 **Cyc.**, p. 453, n. 86, 87, p. 455, n. 2, p. 470, n. 78.

12.   See 19 **Cal. Jur.** 621; 20 **R. C. L.** 66.

APPEAL from a judgment of the Superior Court of Alameda County. Mortimer Smith, Judge. Reversed.

The facts are stated in the opinion of the court.

Ostrander & Carey and Charles D. Wehr for Appellant.

Snook & Brown, Thos. J. Ledwich and George A. Connolly for Respondents.

KNIGHT, J.—An appeal by plaintiff from a judgment of nonsuit in an action to recover damages for personal injuries.

About noon on the day of the accident appellant entered a department store owned and operated by respondent Kahn Bros., a corporation, for the purpose of making a purchase of merchandise, and while there seated herself on a stool in front of a lunch-counter maintained in said store and operated by respondent W. J. O'Brien, intending to lunch thereat. Upon arising from the stool she slipped or stumbled from a low platform on which the stool was fastened and was thereby injured.

The complaint alleged: "That the said fall by plaintiff to the floor, and the said injuries, was and were occasioned by the unsafe and defective condition of said stool and platform in this: that a portion of the said temporary platform, and to which portion the stool upon which plaintiff had been seated was affixed, consisted of a wooden plank of an inch or more in thickness, one end of which was immediately to the right of said stool, so that when plaintiff was arising from said stool and turned to the right to step to the floor her right foot slipped from the end of said plank, causing her to lose her balance and fall as aforesaid"; that plaintiff "did not know that the platform was uneven, or in the condition hereinabove described, or in any dangerous or defective condition."

The evidence shows, with more particularity, the construction of said platform and stool to have been as follows: The stool upon which appellant seated herself, together with three other stools, was fastened to an inch plank laid upon and securely fastened to a temporary wooden platform, composed of two-inch planks resting on joists laid upon and along the surface of a tile floor. The platform

was about two and a half feet wide, and the elevation was approximately six inches above the tile floor, the space between the tile floor and the under surface of said two-inch planks being left open. The edge of the one-inch plank on which the stools were fastened extended to within a few inches of the outer edge of the platform, and the end thereof projected five or six inches beyond the base of the fourth or extreme right-hand stool on which appellant was seated, causing an uneven surface on the platform the thickness of said one-inch plank. The circular-shaped seat of the stool was thirty inches above the surface of the platform and rested on a standard running down into a cone-shaped base, fastened to said one-inch plank, the base of the cone resting in the center of and covering about two-thirds of the width of said plank. The evidence further shows that the construction of said platform and stool was rigid and strong.

The direct cause of appellant's fall, as testified to by the only witness who observed the movement of appellant's feet as she was about to leave the platform, was that " . . . one board was shorter than the other, and her foot turned on it." Continuing, the witness stated: "I saw her foot as it turned, and it just threw her—there was nothing there for her foot to rest on, she lost her balance, and just plunged off the platform." Regarding this same matter and aside from any confusion which respondents claim exists in the testimony, appellant testified in effect that after arising from the stool she stood erect, took one short step, and as she started to take another step, fell; that when taking the second step, she felt her foot "strike the board," but that she "did not see the board" nor did she "actually see" what caused her "to stumble."

Respondents contend that even though it be conceded that the platform was in an unsafe condition on account of the unevenness thereof, the granting of the nonsuit must be sustained upon the ground of appellant's contributory negligence, in that it affirmatively appears from her testimony, as they claim, that she observed the condition of the platform when she stepped up to take her seat on said stool, and that having knowledge of its condition failed to exercise ordinary care in arising from the stool and leaving the platform.

[1] The general rule is that a motion for a nonsuit should be denied when there is any evidence to sustain the plaintiff's case, without passing upon the question of its sufficiency, or as to whether the court believed it or not. [2] Upon such motion the material facts which the evidence tends to prove must be assumed to be true; if the evidence is fairly susceptible of two constructions, the court must take the view most favorable to the plaintiff, and if contradictory evidence has been given, it must be disregarded. (*Mitchell* v. *Brown,* 18 Cal. App. 117 [122 Pac. 426].)

[3] Disregarding, therefore, any asserted contradiction in the proof, it appears from appellant's testimony that she looked down and saw "the *platform*" when she "stepped up" to be seated on the stool; that it appeared to her "like it was just temporary construction"; also that she "just glanced down at the *platform*" as she arose from the stool in leaving. (Italics ours.) But in connection therewith she further testified, on redirect examination, that prior to the accident she had not observed any unevenness in the platform at the point where she fell; that after she had fallen and was seated in a chair which had been brought to her, she noticed "that the end of the board extended out a short distance from the stool."

We are of the opinion that the latter testimony is, as appellant contends, susceptible of the fair inference that although appellant realized, necessarily, that there was a platform upon which she stepped in taking her seat on the stool, she did not in fact observe the details of construction of said platform so as to note the unevenness of its surface; and, therefore, since the evidence tends to show, as already pointed out, that the unevenness of said platform was the element of danger which caused appellant to fall, the question of whether appellant did observe the unevenness of the platform, and, consequently, have knowledge of the existence of the said danger, should have been left to the determination of the jury. [4] In other words, we believe that the mere fact that appellant saw the platform when she stepped upon it would not warrant the court in declaring, as a matter of law, that she knew or should have known of the existence of any unevenness in its surface, particularly in view of her positive statement to the con-

trary. (*Brinkworth* v. *Sam Seelig Co.*, 51 Cal. App. 668 [197 Pac. 427].)

In furtherance of their contention that appellant did observe the unevenness of said platform, respondents call attention to the fact that appellant testified as to particular matters concerning the construction thereof, in so far as it related to projections and measurements, and the location of the stool thereon. But in this connection the record fairly supports the conclusion that the facts thus testified to by appellant were gained by her as a result of the observations she was making from the photograph of the platform, regarding which she was then being cross-examined, and also from those made by her while seated in the chair, near the point of the accident, after the happening thereof, and that said testimony was not based upon observations made by her before she started to leave the platform.

[5] Even though appellant's testimony was susceptible of the one construction that prior to the accident she did observe the unevenness of said platform, which it is claimed constituted the element of danger, there would still be the question for the determination of the jury as to whether or not it was a want of ordinary care on the part of appellant not to have kept in mind such element of danger while arising from the stool and leaving the platform. (*Hayward* v. *Downer*, 65 Cal. App. 450 [224 Pac. 265]; *Meindersee* v. *Meyers*, 188 Cal. 498 [205 Pac. 1078].) In the former case it was said: "There is much respectable authority in support of appellant's first point, and such, in fact, was the rule in this state until the Supreme Court, in *Meindersee* v. *Meyers*, 188 Cal. 498, 503 [205 Pac. 1078], held that, notwithstanding this knowledge and means of knowledge, it was for the jury to determine whether it was a want of ordinary care for the injured not to have the source of danger in mind." And in the latter case it was declared: "Even forgetfulness of a known danger will not always operate to prevent such recovery, for to forget is not negligence unless it shows a want of ordinary care. Generally the question is one for the jury (*Roseberry* v. *Edward F. Neihaus & Co.*, 166 Cal. 481 [137 Pac. 232]), and the present case comes well within the rule."

[6] We find no merit in the further point made by respondents that under neither the allegations of the complaint

nor the circumstances proved at the trial was it shown that
the platform was defective; or if it was, that such defect
was patent, and, consequently, no recovery can be based
thereon. The complaint alleged, and substantial evidence
was offered to prove, that the platform was uneven, and that
by reason of that condition alone appellant sustained in-
juries. It was therefore a question for the jury to decide
as to whether such unevenness rendered the platform un-
safe and dangerous, and if so, whether, under the circum-
stances adduced, its dangerous and unsafe condition was
patent to appellant. The action herein is not based upon
the ground that appellant's fall was occasioned by the mere
presence of said platform, but on account of the uneven
surface thereof, the action in this respect differing from
those cited by respondents upon this point, wherein the
injuries were caused by falling on steps or elevated struc-
tures which the owner has a right to assume would be
obvious to an invitee upon the ordinary use of the latter's
own senses.

[7] Respondents further contend that the judgment of
nonsuit must be sustained in any event upon the ground
that the complaint fails to state a cause of action, in that
it contains no general allegation of negligence, nor any
general allegation as to the stool and platform being "un-
safe and defective"; and that although appellant attempts
to set out with particularity the specific defective condition
of the stool and platform, the facts alleged do not of them-
selves show such condition to have been unsafe or defective.
It is doubtless necessary, as respondents assert, that it ap-
pear in the pleading by direct averment that the acts caus-
ing the injury were done negligently or else the facts
alleged must in and of themselves necessarily exclude any
hypothesis other than that of negligence (*South* v. *County
of San Benito,* 40 Cal. App. 13 [180 Pac. 354]); but we
think that the allegations hereinabove referred to bring
the complaint within the rule stated. But even though the
complaint be subject to the defects claimed, they were ren-
dered harmless because the answers of respondents fully
tendered the issue of the alleged defective and unsafe
condition of said platform and stool, and the trial of the
action proceeded upon that issue. [8] "It is well settled
that a complaint which lacks the averment of fact essential

to a cause of action may be so aided by the averment of fact in the answer to uphold a judgment therein, even though a demurrer to a complaint for the want of this fact had been erroneously overruled" (*Daggett* v. *Gray*, 110 Cal. 169 [42 Pac. 568], cited approvingly with other authorities in *Martin* v. *Southern Pacific Co.*, 44 Cal. App. 3 [185 Pac. 1030]) ; and where a complaint is defective in that it does not expressly allege that the negligence of defendant was the proximate cause of the injury, but such issue is raised by the answer and the case is fairly tried upon the merits and under circumstances indicating that nothing in the pleadings misled defendant to his injury, the matter of pleadings becomes immaterial. (*Fay* v. *Cox*, 45 Cal. App. 696 [188 Pac. 623].)

[9] Equally without merit is the contention urged on behalf of respondent Kahn Bros., Incorporated, that, irrespective of all questions of negligence, the nonsuit as to it must be sustained upon the ground that its legal relation to the lunch-counter enterprise was merely that of lessor. True, there was a provision in said lease that Kahn Bros. "should have no interest in said business"; but when all the evidence adduced on this point is considered, the inference may be reasonably drawn therefrom that the interest mentioned was a financial one only, and that it still retained a certain amount of control over the conduct of said business and of that portion of the premises occupied by it, which would tend to legally connect it with liability for any injuries proximately caused by the alleged defective condition of said platform.

The evidence in this respect was in substance as follows: Said counter was located within the department store and on the main floor thereof; and, according to the testimony of the vice-president of said corporation, was maintained for the purpose of serving meals to patrons of said store, the aisle adjacent to the stools in front of said counter being used in common by patrons of the store and the lunch-counter. The lease provided that said enterprise should be conducted in the name of Kahn Bros. and not in the name of the lessee; the right was given to the lessor to cause the discharge of the lessee's employees on reasonable grounds; to require the lessee to improve the quality of his goods or reduce his prices; and make such discounts

on sales made to dressmakers, employees, and such other classes as the lessor should deem wise. It further provided that the lessee should do no advertisng of said business in his own name or otherwise than in the name of the lessor, nor without first obtaining the consent of the lessor; and many other restrictions were placed upon the conduct and operation of said lunch-counter business, which need not be mentioned herein. Said lease contained the further provision that the location, style, arrangement, color, and construction of all fixtures should be subject to the approval of the lessor, and it was shown that pursuant to the provision last mentioned the original installation and construction of said lunch-counter, together with the necessary equipment, including said platform and stool, and the subsequent changes and repairs thereto, were done and made with the approval of Kahn Bros.

[10] In addition appellant offered in evidence a printed menu ·generally used at said lunch-counter, on the front cover of which is printed: "Kahn's Soda Fountain Menu," but on objection by respondent Kahn Bros. the evidence was excluded. We believe that appellant was entitled to the proof as a circumstance tending to show that Kahn Bros. had an interest in said business beyond that of mere lessor.

[11, 12] In view of the foregoing facts it would seem that the status of the respondent Kahn Bros. was sufficiently brought within the general rule that the owner or occupant of premises who induces others to come upon it by invitation, express or implied, owes them the duty of using reasonable and ordinary care to keep the premises in a safe and suitable condition so that they will not be unnecessarily or unreasonably exposed to danger (29 Cyc. 453; *Herzog* v. *Hemphill*, 7 Cal. App. 116 [93 Pac. 899]; *Means* v. *Southern California Ry. Co.*, 144 Cal. 473 [1 Ann. Cas. 206, 77 Pac. 1001]), and also within the rule of *Brinkworth* v. *Sam Seelig Co., supra*, and the cases therein cited, which hold that one who, during business hours, lawfully enters a store to purchase goods does so at the implied invitation of the owner, upon whom the law imposes the duty of exercising ordinary care and prudence to keep the aisles and passageways, in and through which by their location and arrangement a customer in making his purchases is induced to go, in a reasonably safe condition so as to not unneces-

sarily expose him to danger or accident; it appearing here that said platform in question was located in a part of said store where customers were wont and were required to go while making purchases therein. (*Williamson* v. *Hardy,* 47 Cal. App. 377 [190 Pac. 646].)

From the state of the record before us, we conclude that the motions for nonsuit were erroneously granted, and, therefore, the judgment entered thereon is reversed.

Tyler, P. J., and Campbell, J., *pro tem.,* concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 28, 1927.