[Civ. No. 9115.   Third Dist.   Sept. 27, 1957.]

ALTA C. SHIPMAN, Respondent, v. QUAILE R. NORTON et al., Appellants.

———

*Assigned by Chairman of Judicial Council.

Cardozo, Trimbur & Nickerson and E. L. Gorgas for Appellants.

Daniel E. O'Connell for Respondent.

SCHOTTKY, J.—Plaintiff commenced an action to recover damages for personal injuries received by her as the result of a fall as she was leaving defendants' funeral parlor in the city of Turlock.  Defendants denied any negligence on their

part and also pleaded contributory negligence on the part of plaintiff. The case was tried by the court sitting without a jury, and the court awarded plaintiff damages in the sum of $3,500.

The court found "that on the 10th day of October, 1953, the plaintiff, Alta C. Shipman, was on the premises of defendants as an invitee, to attend a funeral service for a friend; that upon completion of said service, plaintiff left the chapel through the front door of the building and crossed the porch or veranda and that she fell at a 3½ inch step or drop-off between the porch or veranda and the walkway; that the material and color of the porch or veranda and the walkway were identical and that the drop-off or step between the porch and the walkway was obscure and difficult to observe when leaving the building; that there was no attendant there to warn people leaving the building of the drop; that the defendants were negligent in maintaining the step or drop-off under the then existing conditions."

Defendants have appealed from the judgment and their principal contentions are (1) that the evidence was insufficient to support the court's finding that defendants were negligent, and (2) that plaintiff was guilty of contributory negligence as a matter of law.

We believe that these contentions are adequately and correctly answered as to the facts and the law by the memorandum opinion filed by the trial court, from which we quote as follows:

"It appeared both from the testimony and the Court's observation of the premises that the porch and the front walk were painted the same color. There were no markings to indicate the 3½ inch drop from one to the other at the time of the accident; nor was any attendant there to warn people about the drop. Plaintiff had entered the chapel through the front door prior to the services, and in so doing had stepped up from the front walk to the porch over the 3½ inch rise. She had been there at least once previously, sometime before. She testified she knew the step was there as she came out the door, but did not notice it as she came to it after crossing the porch and prior to her fall.

"The question is whether the maintenance of the step under the conditions—without anything to mark it and without any attendant being there to warn the people attending the funeral of the drop, constituted negligence.

"The Court is of the opinion that it did, under the rule stated in *Touhy* v. *Owl Drug Co.* (6 Cal.App.2d 64 [44 P.2d 405]).

"In this case, the plaintiff fell while stepping from a raised soda fountain counter platform to the adjacent floor. Both platform and floor were covered with the same design, size and color of tiles. The court remarked:

" 'That respondent was deceived by the appearance of the platform and floor into an assumption that they were on a common level, and received her injuries as a direct result thereof, appears clear and uncontrovertible. To maintain such platform and floor in that condition constituted a potential danger to ordinary humanity which might be deceived thereby into a false step with resultant injury, of which danger the proprietor must be presumed to have knowledge superior to that of a casual invitee entering his premises. Being under duty to maintain such premises in a reasonably safe condition in respect to use thereof by invitees, the owner or occupant is bound by the same duty to take into consideration all the classes and grades of such invitees as they go to make up the ordinary public which enters upon such premises. That only one or two of thousands entering such premises in a period of months fell because of such deception does not affect the rule of liability, but goes to furnish some proof of the camouflaging effect of the use of the same color or design on different levels, especially on floors having platform elevations maintained for the use of patrons. We are of the opinion that the finding of negligence is sustained by the evidence.'

"A petition for rehearing was denied by our Supreme Court and the Touhy case is apparently still the law in California.

"If our courts have held that the maintenance of a drop or step from a soda counter platform to the adjacent floor without any differentiation of color to warn the patron of the drop was negligent, the rule would seem to be even more applicable in the case of a funeral parlor. ▮ It is a matter of common knowledge that a certain number of people who attend funerals are emotionally upset when they leave the chapel following the services and cannot be expected to look down at their feet constantly to see if there is an unmarked drop between there and the outer walk. Counsel for defendant contends that even so plaintiff should be held contributorily negligent, and thus barred from recovery. The Court cannot agree with this contention, under the rule of the Touhy case.

"Counsel for the defendant attempts to differentiate the Touhy case on the ground that the plaintiff in the Touhy case testified she could not remember how she first got on the elevated step or platform in question; whereas the plaintiff in this case remembered entering the funeral home by stepping up to the porch and entering through the front door. But this is a distinction without a difference. The only way the plaintiff in the Touhy case could have got on the platform was to step upon it."

Appellants argue that in the instant case respondent knew about the step and how she got up on the porch, while in the Touhy case the respondent testified that she did not know how she got up on the platform, that she did not remember the step. Also that in the instant case the porch and walk were outside of the building in broad daylight, whereas in the Touhy case the platform and floor were inside the building. Further, that respondent had walked some 8 feet on the porch and knew that she would have to step down to the walk, whereas in the Touhy case the respondent had been sitting down before her fall.

Appellants also argue that since respondent knew about the step there can be no liability as in the Touhy case. What is more important is that there was a lack of knowledge that the step was so camouflaged because of the same size and color of the design that it was difficult to perceive the existence of two different levels from the higher level. Such a step would be quite obvious upon ascending the platform or porch, but not when descending. In regard to the construction of the step and walkway, respondent testified:

"Q. . . . as you left the doorway and looking out forward, did you notice the construction of the porch in any way, Mrs. Shipman? A. Well, yes, it was—the same as the walk, you know, the same construction. . . . Q. Do you remember the color? A. Well, I presume, then, it was tile—brick tile, you know, with the lighter streaks between. Q. And you remember the color of it? A. Well, red and white, I presume. Q. And to your knowledge, or do you know, was the porch the same color as the walkway? A. Yes."

It would thus appear that the camouflaging in the present case consisted of the continuance on the two levels of the same design or pattern of what appeared to be red brick tiles with mortar between, while in the Touhy case the camouflaging consisted of the checkerboarding of tiles. Probably if the two levels had consisted solely of the same color with a solid

pattern, the line of demarcation between the two levels would have been easily discerned.

Appellants point to other evidence in the case but their argument upon the question of the sufficiency of the evidence is but an argument as to the weight of conflicting evidence. If the judgment had been in favor of appellants their argument would be very helpful in pointing out evidence supporting such a judgment, but in view of the adverse judgment the testimony pointed out and relied upon by appellants merely accentuates the conflict in the testimony, which conflict it was the function of the trial court to resolve. The trial court, first in its findings and judgment, and again in denying appellants' motion for a new trial, resolved this conflict against appellants, and this finding, based as it is upon conflicting evidence, is binding upon us. We are convinced that the evidence in the instant case, and the inferences that may reasonably be drawn therefrom, together with the court's view of the premises, give substantial support to the court's findings that appellants were negligent in their maintenance of the step and that respondent's injuries were proximately caused by such negligence.

■■ As was stated in *Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, at page 233 [282 P.2d 69] :

"Generally, the owner of property '. . . is under a duty to keep in safe condition all portions of premises over which he has control' (*Sexton* v. *Brooks*, 39 Cal.2d 153, 156 [245 P.2d 496]) and in more detail: 'A possessor of land who knows, or reasonably should know, of a natural or artificial condition upon his premises which, he should foresee, exposes his business visitors to an unreasonable risk, and who has no basis for believing that they will discover the condition or realize the risk involved therein, is under a duty to exercise ordinary care either to make the condition reasonably safe for their use or to give a warning adequate to enable them to avoid the harm.' (*Crane* v. *Smith*, 23 Cal.2d 288, 296 [144 P.2d 356] ; see also Prosser on Torts, pp. 642 et seq.) "

Appellants' next contention is that respondent was contributorily negligent. They argue that "she failed to watch where she was going," and that "she was looking to her right at Mrs. Holden instead of looking at the porch and the step." They quote testimony of Mrs. Holden to the effect that respondent was facing toward her and that respondent's head was toward her when she went off the step. This testimony does not compel the conclusion that respondent was looking

at Mrs. Holden or that her eyes were not on the porch when she was walking. It only indicates that her head may have been turned toward Mrs. Holden. ██ The question of whether or not respondent was guilty of contributory negligence was one for the trial court to determine from all of the evidence and we cannot agree with appellants that it must be held upon the record in the instant case that respondent was contributorily negligent.

As stated in *Anthony* v. *Hobbie,* 25 Cal.2d 814, at page 818 [155 P.2d 826]:

"True, contributory negligence may be found by the trier of fact from the plaintiffs' own evidence. But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. . . . and . . . before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion." ·

And in the case of *Thompson* v. *B. F. Goodrich Co.,* 48 Cal. App.2d 723, 728, it was said [120 P.2d 693]:

"Again in *Roach* v. *Wells Fargo Bank & Union Trust Co.,* 102 Cal.App. 380 [282 P. 967], the court said: 'The defendant claims that the plaintiff Clara J. Roach was guilty of contributory negligence. This attack rests upon the contention that Mrs. Roach was looking directly ahead and did not look down at the floor, and if she had looked down she would have been able to see that there was a variation in levels between the outside room and the inside room. All of these matters in the instant case presented questions of fact which were properly left to the jury. [Citations.]' "

See also *Oles* v. *Kahn Bros.,* 81 Cal.App. 76 [253 P. 158].

██ Appellants' final contention is that respondent's fall was caused by epilepsy. Dr. Waldorf testified that he had been treating respondent for epilepsy and that she was subject to falls. However, Mr. Walker testified that he had never seen the respondent faint or fall other than her fall here in question and that he had known her for some 20 years. We believe that this contention is correctly answered by the trial court in its opinion as follows:

"Counsel for defendant also contends that because plaintiff had had some epileptic seizures in the past, we should assume that her fall was the result of such a seizure, rather than falling as she stepped off the drop. But the answer is that there is no evidence whatever that she had such a seizure at that time. If she had, certainly some of the usual symp-

toms of such a seizure would have been apparent to some of the many witnesses. But no such evidence even remotely suggesting that plaintiff's fall was the result of an epileptic seizure was presented."

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied October 18, 1957, and appellants' petition for a hearing by the Supreme Court was denied November 20, 1957.