[Civ. No. 4427.  Third Appellate District.—February 26, 1932.]

A. B. RANNARD, Respondent, v. WALTER HARRIS et al., Appellants.

282

W. D. Tillotson and Russell A. Harris for Appellants.

Carr & Kennedy for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment entered upon the rendering of a verdict for damages for personal injuries which were sustained by the plaintiff as the result of an automobile casualty.

The negligence of the driver of defendants' automobile is admitted. Liability for the injuries sustained by the plaintiff and for damage to his machine are also conceded. It is contended the plaintiff was only slightly injured and that the amount of the judgment is excessive. It is also asserted plaintiff's attorney was guilty of prejudicial misconduct in disclosing, upon the examination of a witness, the fact that an insurance company was interested in the outcome of the litigation.

On September 27, 1929, the plaintiff, in company with his wife, was driving his Hudson sedan automobile southerly on the Pacific Highway between Lamoine and the city of Redding, on the way to their home at Santa Monica. At the same time the defendant Harris was driving a Hupmobile sedan, belonging to the Los Angeles Brewing Company, northerly along the same highway. It was a sultry day. Harris admits becoming drowsy and parking his car on the margin of the highway at a point about thirty-five miles northerly from Redding, while he slept for about half an hour. Upon awakening he resumed his journey. He did not remember having seen the plaintiff's car until after a collision occurred. He admits that, "I just simply fell asleep again momentarily." The plaintiff testified that he

met the defendants' machine as he was rounding a curve, and that without warning the Hupmobile sedan drove straight across the highway on to the plaintiff's side thereof and crashed into his machine with terrific force. The plaintiff's car was badly demolished. His wife was seriously injured, but remained lying on the cushion of the front seat after the collision. Regarding the result to himself of the collision, the plaintiff testified: ''I was thrown violently forward, the steering post hit me in the abdomen and my head went through the windshield and then I seemed to come back this way in a recoil and I was out on the pavement, with two pieces of the wheel in my hand.'' It appears he was thrown from his machine and landed on his back on the paved highway with a portion of the broken steering-wheel in either hand. He was rendered unconscious from the fall, but soon recovered and returning to his machine he removed his wife and placed her on a cushion by the side of the road. Subsequently his wife was taken to the hospital at Redding, where she remained for about six weeks. The plaintiff did not at first realize he was seriously hurt. He said that McSwiggen, foreman of the Pacific Telephone and Telegraph Company, who arrived soon after the accident occurred, ''rendered first aid and wrapped my legs up and wiped the blood off of the cut in my chin and neck and jaw''.

In due time this action for damages was commenced. It is alleged the plaintiff sustained numerous injuries as a result of the accident, including permanent injuries to the back and kidneys, and that his automobile was seriously damaged. The complaint prays for damages to the automobile in the sum of $1,000; for medical and hospital expenses in the sum of about $1200, and for general damages in the additional sum of $25,000. The jury rendered a verdict for $7,250. The appellants concede that plaintiff is entitled to damages in the sum of $1175, but insist that no permanent injuries were sustained by the plaintiff and that the amount of the judgment is excessive to the extent of at least $6,000.

Regarding the nature of the injuries which were sustained by the plaintiff, there is a conflict of evidence. Five physicians were examined respecting his injuries and physical condition. They differ radically, regarding the question as

to whether the condition of his kidneys, which indicates the existence of Bright's disease, may be attributed to the injuries which he received in the accident.

The plaintiff testified that immediately following the accident he was so worried about the condition of his wife that he did not realize the seriousness of his own injuries. He was evidently thrown through the door of his car by the violence of the collision, and landed flat on the pavement, still clinging to the broken parts of the steering-wheel. He said that both legs and knees were badly bruised and cut in several places; the skin was torn from his left leg from the knee to the ankle; one ankle was sprained and both were badly swollen; his neck was cut; his chin and jaw were bruised and injured so that it became necessary to remove some teeth; the jaw continued to cause pain and trouble, which interfered with its articulation and with his eating; his right chest was injured causing severe pain in his respiration for a period of several months; a lump half the size of an orange and several inches in length formed on the chest; a contused spot in the abdomen caused great suffering; his back and spine were injured; he continued to suffer from these wounds and contusions for several months; he was confined to his bed much of the time for four months; he tried to work in a shoe store, but was compelled to abandon the work because he was unable to stand on his feet for long periods of time. Dr. Fortin corroborated much of the foregoing and said that the plaintiff appeared to suffer greatly from his injuries. Prior to the accident the plaintiff was an able-bodied man free from ailments or disease. The doctor testified: ''His general condition was that he was weak, nervous, suffering from pains and insomnia, he couldn't sleep. I had to give him strong medicines to get him to sleep at times. . . . He was completely out of business as far as doing anything was concerned, doing the usual ordinary duties that fall to a man. . . . Q. What is the general condition that he was suffering from during that time? A. Weakness, loss of vitality, loss of nerve force, loss of muscular power. . . . Q. What condition, then, would you describe it to be in this case? . . . A. Chronic neurasthenia. . . . August 16, 1930 (nine months after the first treatments) I was called to go over to see him and I found an exceedingly ill man. He then

had high temperature, . . . very severe pain in his back . . . just at the bottom of the ribs, the lumbar region. . . . The lower back on both sides, so tender that you could hardly touch him. . . . He was passing water frequently and had pain, great pain accompanying it. I took a sample . . . and found what was passed was loaded with pus and blood and casts. . . . I diagnosed it at that time as pyelonephritis, which means inflammation of the kidney. . . . Q. From what did you determine the condition of his kidneys resulted? A. : . . Lowered resistance to fight the disease. Q. Resulting from what? . . . A. . . . I would say that his being in pain and sleepless and suffering, that brought him down to a condition where he was likely to take anything.'' The clear inference to be drawn from the doctor's testimony is that the plaintiff's power of resistance was lowered by the suffering resulting from the injuries which he sustained in the accident so that it contributed substantially to the chronic kidney disease with which he was afterwards afflicted. It also appears that the injury to plaintiff's jaw caused him to suffer for more than a year, and that this suffering was likely to continue in the future. In response to an inquiry regarding future trouble from this jaw, the doctor replied: ''I can't say. He complains of pain there; it has lasted for over a year now. . . . Q. And in your opinion will Mr. Rannard suffer in the future from that condition of the injury to his jaw? A. Yes, I think he will.''

While the testimony is conflicting regarding the seriousness of plaintiff's injuries and concerning the origin of the kidney disease with which he was afterward afflicted, there is satisfactory evidence of numerous bruises, contusions and ailments which were suffered by the plaintiff as a result of the accident so that it may not be assumed the amount of the verdict is so grossly excessive as to require the inference that it was procured as a result of passion or prejudice on the part of the jurors. Conceding that the testimony is unsatisfactory with respect to the cause of the kidney disease, there is substantial evidence of serious injury to the plaintiff's back, chest and jaw, together with numerous cuts and bruises from which he suffered pain for the period of a year and which confined him to a hospital most of the time for four months. Under such circumstances we

may not say, as a matter of law, that a verdict of $7,250 is excessive.

■ The determination of a sum of money which will be deemed to adequately compensate one for damages suffered on account of personal injuries sustained and the pain and suffering incident thereto, necessarily rests largely in the sound discretion of the trial judge or of the jury. This discretion may not be interfered with unless it clearly appears that the amount which is awarded is so grossly excessive as to shock the conscience or enforce the inference that it is the result of passion or prejudice. (20 Cal. Jur. 101, sec. 65; *Even* v. *Pickwick Stages System,* 109 Cal. App. 636 [293 Pac. 700].) The record in the present case impels no such conclusion. In contemplation of the foregoing well-established rule of law, the judgment is not excessive.

■ The appellant contends that prejudicial error occurred in the examination of the plaintiff by disclosing the fact that an insurance company was interested in the outcome of the litigation. Regarding this matter, the following examination of the plaintiff by his attorney occurred: ''Q. Now during the time that you were in Redding were you under the care of any physician? A. Yes. Q. What physician? A. Doctor Taylor. Q. And were you examined by any other physician? A. Yes. Q. Was he your physician? A. No. Q. Who was it? A. Doctor Stabel. Q. Doctor Stabel, acting for the defendants in the case? A. I believe so. He said he represented the insurance company, I think. Mr. Harris (attorney for defendants): Just a moment, if your Honor please. At this time I wish to accuse counsel of misconduct. Mr. Carr (attorney for plaintiff): Don't accuse me. I join in a request to strike that answer out and I want to caution the witness not to say anything about any insurance company, and I ask that the jury be requested to disregard it.'' The jury was instructed to disregard the answer.

We are satisfied this examination does not constitute prejudicial error. It is apparent there was no intention on the part of counsel for the plaintiff to disclose the interest of an insurance company. The whole theory of defendants' case is that the plaintiff was only slightly injured. In proof of this theory it was shown that he picked his wife up and

carried her to a place near the border of the highway, and that he did not greatly complain of his injuries at the hospital in Redding. To rebut this charge, the plaintiff was attempting to show that he had been examined soon after the accident by Doctor Taylor and other physicians. The interrogatories on this subject seem perfectly natural and proper as a means of developing the circumstances to refute the inference that he was pretending to be injured more seriously than the facts warrant. Dr. Stabel had previously given his deposition. This deposition was subsequently read in evidence by the defendants. Nothing appears in the record to indicate whether the deposition was taken at the instance of the defendants. While Dr. Stabel testified to most of the bruises and contusions of which the plaintiff complained, his evidence was not favorable to the plaintiff. It seems quite natural that plaintiff's attorney did not wish to be bound by this evidence and desired to have the jury know this physician's testimony was not adduced in his behalf. The last question prior to the answer which is challenged as prejudicially erroneous seems to refute the charge of a wilful intention to disclose the interest of an insurance company. This question is: "Q. [Was] Doctor Stabel acting for the defendants in the case?" This question does not suggest an answer which has any reference to an insurance company. It definitely calls for the reply "yes sir". If plaintiff's attorney had intended to divulge the presence of an insurance company, he would have asked the witness, "Whom did the doctor represent?" The examination of this witness appears to have been conducted in good faith for a legitimate purpose. It does not constitute prejudicial error. (*Dermer* v. *Pistoresi,* 109 Cal. App. 310 [293 Pac. 78].)

Finally the appellant charges as prejudicial error the reply of Dr. Fortin to an inquiry propounded to him on cross-examination regarding the physical condition of the plaintiff. This colloquy occurred between counsel for the defendants and the doctor: "Q. Doctor, were you present at the examination which was made of this patient last night in Dr. Sewall's office in this city? A. Yes. Q. Wasn't (this) one of the first exclamations you made at that time 'Here, take a look at this man. He is a physical wreck?' A. I don't remember any such words. Q. Would

you say that you did not so state? A. I wouldn't think so. I wouldn't be so foolish. Why have I told Mr. Rannard to leave the courtroom now? Because I didn't want him to hear what we are saying. . . . That is why Rannard is not in the courtroom now, (it is) by my orders. I wouldn't talk about this disease in front of him." This reply to the accusation appears to be a mere argument that the doctor was not likely to have said "take a look at this man, he is a physical wreck", because it is contrary to the ethics of the medical profession to discourage a patient by discussing the seriousness of his malady in his presence. The answer merely infers the plaintiff was afflicted with a chronic disease of the kidneys, and that the doctor did not wish to discuss this condition in his presence. There is no controversy regarding the fact that the plaintiff is actually afflicted with kidney trouble. The only serious issue was whether that ailment resulted from the injuries which he received in the accident. The answer was harmless. It does not constitute error.

The judgment is affirmed.

Preston, P. J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 25, 1932.