[Civ. No. 5079. Third Appellate District.—June 22, 1934.]

J. FLURY, Respondent, v. BENNIE BEESKAU et al., Appellants.

Len H. Honey, Lafayette J. Smallpage and Charles H. Epperson for Appellants.

Gumpert & Mazzera for Respondent.

THOMPSON, J.—The defendants have appealed from a judgment rendered pursuant to the verdict of a jury, for damages for personal injuries sustained by the plaintiff as the result of a collision which occurred at the intersection of two streets in the city of Stockton, between the defendants' truck and the plaintiff's bicycle while the latter was attempting to make a left turn.

El Dorado and Channel Streets intersect at a right angle in the business portion of Stockton. El Dorado Street extends north and south and is 56 feet in width with two parallel street-car tracks along the center thereof. Channel Street extends east and west and is 40 feet in width east of El Dorado. The curbing which marks the northerly boundary of Channel Street extends along a straight line both east and west of El Dorado, but the southerly curbing of Channel Street, west of El Dorado, is 66 feet farther south than that line of Channel Street as it exists east of El Dorado. In other words, Channel Street is 106 feet in width west of El Dorado Street to the waterfront.

The testimony is conflicting, but there is ample evidence to support the following facts: At 5:30 P. M. on October 25, 1932, the plaintiff was riding a bicycle northerly along the proper side of El Dorado Street with the purpose of going to the fish market near the waterfront on Channel Street. It was daylight and the atmosphere was clear. The bicycle was equipped with a coasting brake which was in good condition for use. There was some traffic on these streets at that time. When the plaintiff reached a point

about 60 feet south of Channel Street he pulled his bicycle over to a course adjacent to the nearest rail of the street-car track. He observed the defendant's Ford truck coming south on El Dorado Street. It was being driven by the young man, Beeskau, who is also a defendant in this action. The truck was then about a block north of Channel Street. The plaintiff reached the intersection of the streets before the defendants' truck entered that space. Beeskau saw the bicycle approaching when it was 120 feet south of Channel Street. Before reaching the intersection, the plaintiff extended his left arm indicating his intention to make a left turn at that point. The bicycle was running at the rate of about six miles an hour. After passing the intersecting point of the streets, Flury turned his bicycle to the left and reached a point midway between the two parallel street-car tracks when he saw the defendants' truck only about 10 feet away running at the rate of about 25 or 30 miles an hour and following a course near the center of the street with its left wheels about the middle of the westerly street-car track. Although the truck driver had seen the bicycle coming north at a point 120 feet south of Channel Street and his vision was not obscured by intervening traffic, he neither watched the plaintiff nor observed his signal for a left turn. He admitted that he was running "pretty fast". He was only 10 feet away from the bicycle when he saw it headed across his pathway. A collision appeared to be imminent. The plaintiff pulled his bicycle abruptly to the left and Beeskau turned the truck right to avoid the collision. The two machines struck at a point just back of the left front wheel of the truck. They collided at a point a few feet north and west of the intersecting point of the two streets, about 15 or 18 feet south of the northerly line of Channel Street. The plaintiff was thrown from his bicycle, which was demolished. He was seriously injured as a result of the accident. He was picked up unconscious and taken to a hospital for treatment. Beeskau testified that he did not notice the plaintiff after he first observed him 120 feet south of Channel Street until he suddenly saw his bicycle about ten feet away headed directly across his pathway. He was looking for the approach of other machines as he entered the intersection of the streets and failed to observe the plaintiff's signal for a left turn or the change in the course

of his vehicle. He promptly stepped on the foot-brake and turned his truck to the right. He said: "We both came together,—he came into me and I went into him. . . . When I hit the bicycle it threw me out of the seat and my foot off the pedal and my hand off the wheel and I could not do any more." His truck turned slightly toward the west, then swerved back in a southeasterly direction, overturning on the easterly street-car track 40 or 50 feet south of the point of collision. Beeskau was uninjured. In this suit for damages a verdict of $7,500 and costs was returned against both the owner and the operator of the truck. Judgment was rendered accordingly. From the judgment the defendants have appealed.

It is conceded the evidence supports the implied finding that the defendants were guilty of negligence which resulted in the accident. A reversal of the judgment is, however, sought on the grounds that the plaintiff was guilty of contributory negligence evidenced by the alleged fact that his bicycle ran into the side of the truck; that the court erred in permitting the introduction of evidence over appellants' objection of an experiment which was conducted with the truck one day after the accident occurred, showing that the brake was then defective, without preliminary proof that the automobile was then in the same condition that it was at the time of the accident; that the court erred in modifying and refusing to give to the jury certain instructions which were offered by the defendants, and that the damages which were awarded are excessive.

We are of the opinion the evidence amply supports the implied finding that the plaintiff was not guilty of contributory negligence. That was a matter for the determination of the jury. There was some traffic at the intersection of the streets where the accident occurred. The plaintiff ran his bicycle over and along the easterly rail of the street-car track for a distance of 50 or 60 feet before he reached the intersecting point where he proposed to turn west. He properly extended his left arm as a signal for his intended left turn as required by the provisions of section 130 of the California Vehicle Act. Beeskau failed to see the signal. The plaintiff's bicycle passed to the right around the central intersecting point of the streets in his effort to make a left turn as provided by section 129 of the last-mentioned

act. The plaintiff looked in every direction for approaching machines before he attempted to make the turn. He saw the defendants' truck half a block away and reasonably anticipated he would have ample time to cross the street. The plaintiff had a right to anticipate he would be given the right of way, since he approached the turn before the truck entered the intersection, and that the driver of the truck would reduce his rate of speed to conform to the law before he crossed the intersection of the streets. There is substantial evidence that the plaintiff was entitled to the right of way for the purpose of making the left turn ahead of the truck pursuant to the rule prescribed by section 131 of the California Vehicle Act, which provides in part:

"Sec. 131. (a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection. . . .

"(b) The driver of a vehicle within an intersection intending to turn to the left shall yield to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard but said driver having so yielded and having given a signal when and as required by law may make such left turn and other vehicles approaching the intersection from said opposite direction shall yield to the driver making the left turn."

A bicycle or motorcycle is recognized as a legitimate means of traveling upon the highways or streets of a city either for business or pleasure. The traffic rules which are prescribed by the California Vehicle Act apply to bicycles and motorcycles as well as to automobiles and other vehicles. (*Hunt* v. *Los Angeles Ry. Corp.*, 110 Cal. App. 456 [294 Pac. 745]; 5–6 Huddy's Cyc. of Auto. Law, p. 330, secs. 190, 191.) Under the circumstances of this case the question regarding the alleged contributory negligence of the plaintiff was a problem for the determination of the jury. The rule of law regarding the effect of contributory negligence applies to a bicyclist just as it does to the operator of an automobile or other motor vehicle. (5–6 Huddy's Cyc. of Auto. Law, p. 336, sec. 195.) Conceding that the plaintiff's bicycle ran into the side of the truck, and that the truck did not run into the bicycle, although Beeskau, the driver of the truck, said, "We both came together, he

came into me and I went into him," that fact alone is not sufficient to establish the contributory negligence of the bicyclist as a matter of law. (*Zuccone* v. *Main Fish Co.*, 104 Wash. 441 [177 Pac. 314]; *Glatz* v. *Kroeger Bros. Co.*, 168 Wash. 635 [170 N. W. 934].)

In support of the judgment it is reasonable to assume the plaintiff used due diligence in watching for machines in all directions at this intersection of streets. As he made the left turn he saw the defendants' machine approaching at a distance of 50 or 60 feet above the northerly line of Channel Street. He may have underestimated the speed at which the automobile was approaching. If Beeskau had seen the plaintiff and had reduced the speed of his truck to the lawful rate of 15 miles an hour in crossing the intersection, Flury would have had ample time to traverse the 15 or 20 feet beyond the pathway of the defendants' machine. The bicycle was running 5 or 6 miles an hour, and the plaintiff had a right to assume that the speed of the defendants' truck would be regulated to conform to the lawful rate of speed. Since the plaintiff commenced to make the left turn before the defendants' machine entered the intersection of the streets, he had a right to assume Beeskau would recognize the fact that he held the right of way and that he would regulate the speed of the truck accordingly. He was not bound to anticipate that the driver of defendants' truck would violate the law by careless inattention to the traffic, and by running his machine across the intersection at the rate of 30 miles an hour as two disinterested witnesses testified that he did. After making the left turn, the plaintiff glanced back toward the north and was surprised to find the truck was nearly upon him. In the emergency he pulled his bicycle abruptly to the left to avoid the collision. At the same time Beeskau suddenly saw the bicycle about to attempt to cross his pathway. He was then but 10 feet away and traveling 25 or 30 miles an hour, too rapidly to stop his truck even with the best of brakes. He then pulled the machine to the right. Evidently the truck and the bicycle approached at an acute angle. The speed of the truck, which was traveling four or five times as fast as the bicycle, enabled it to turn ahead of the bicycle. With the exercise of the utmost effort on the part of both drivers, their vehicles converged and in spite of the plaintiff's frantic

effort to avoid the accident, the collision occurred. Apparently the automobile side-swiped the bicycle as it passed. The plaintiff did not heedlessly run into the truck. When he discovered it was upon him he did everything within his power to avoid the collision, but failed to do so.

The appellants cite several cases wherein it is held that a pedestrian who runs into a passing automobile while crossing a busy thoroughfare is deemed to be guilty of contributory negligence which precludes a recovery of damages for injuries sustained as a result thereof. An examination of these cases discloses the fact that the pedestrians were invariably heedless in their conduct. Those cases determine no principle of law which is controlling of the facts in this case. They may be readily distinguished from the present case. One vital difference is that a pedestrian can stop almost instantly and even step aside or back up to avoid an emergency. A bicycle which is traveling 5 or 6 miles an hour may not be so immediately stopped or diverted in its course. If the plaintiff in this case had been walking across Channel Street instead of riding a bicycle when he suddenly saw the defendants' truck ten feet away he could and undoubtedly would have stopped immediately and would thus have avoided the accident. Unfortunately he was not on foot at that critical moment. The pedestrian cases are of little aid as authority for the solution of the present action. Under the circumstances of this case we are convinced that the question of the plaintiff's contributory negligence was a problem for the determination of the jury, that there is ample evidence to support the implied finding that he was free of negligence, and that the verdict and judgment may not be disturbed on that account.

■ It was not reversible error for the court to permit the introduction of evidence, over the objection of the defendants, of the defective condition of the truck brake after the accident occurred, because of the alleged absence of a preliminary showing that the brake was then in the same condition that it was at the time of the accident. Three witnesses testified that they found the defendants' truck at 5 o'clock on the evening following the accident, parked on the street near by, and that two men were able to shove the machine by hand a distance of two to five feet, while the third individual sat at the wheel with the foot-brake shoved

down to the frame of the floor as far as it would go. When the plaintiff sought to prove that fact by one of the witnesses, the defendants' attorney objected to the evidence on the ground that the foundation for its admission had not been established. Thereupon the driver of the truck, Beeskau, was recalled by the plaintiff under the provisions of section 2055 of the Code of Civil Procedure. He testified that the foot-brake was working properly before the accident occurred, and that he drove the machine "down to the shop" after the accident. The attorney then said, "The old truck was working, was it not?" to which he replied "Yes sir". He also testified that the brakes were not relined until several months after the accident occurred. It thus appeared from the evidence of Beeskau that according to his contention the brake was in good working condition both before and after the accident. To be sure it appeared that the machine was otherwise damaged by the accident. But that was not material in determining the mere admissibility of evidence with respect to the brake only. Thereupon the court permitted the witness to testify that two men shoved the car by hand while the foot-brake was pressed down as far as it would go. Later Beeskau was recalled by the court and testified that the truck was towed into the garage for repairs, but he reiterated the statement that he then used the brakes to stop the machine when he arrived at the shop. The court asked him in that respect, "And you did use the brakes to stop it? A. Yes sir, I did." There was no motion to strike out this evidence regarding the alleged defective brake. Subsequently the other two witnesses were permitted to testify fully to the same facts without objection. All of these witnesses were elaborately cross-examined by the defendants with respect to the experiment.

The record contains credible evidence that the defendants contended the brake was in substantially the same condition when the experiment was made that it was when the accident occurred. Moreover, that evidence was harmless for the reason that it was merely offered to show that the defendants were negligent in driving an automobile with a defective brake, and it appears by the admission of Beeskau that the accident occurred because he did not observe the plaintiff attempting to cross his pathway until the truck was within nine or ten feet of the bicycle, at which time it was

impossible for him to stop the truck so as to avoid the collision, even if the brake had been in perfect condition. The evidence satisfactorily shows that the truck was running at the rate of 25 or 30 miles an hour. In the appellants' opening brief they admit that the truck was running at an excessive rate of speed. They say in that regard: "It is admitted that the evidence would justify the jury in concluding that Beeskau was exceeding the speed limit of 15 miles per hour when he entered the intersection." It is not contended by the defendants on appeal that they were not guilty of negligence. ■ An appellant may not predicate a claim of reversible error upon evidence of negligence of which he tacitly concedes he is guilty. Independently of the question as to whether the brake was defective, the proximate cause of the accident appears to have been the excessive speed of the truck and the careless inattention of the driver of the truck.

■ It is true that evidence of the defective condition of the instrumentality by means of which an accident occurs, which is secured at a time subsequent to the accident complained of, is admissible only upon a preliminary showing that it was in substantially the same condition at the time of the accident. (*County of Sonoma* v. *Stofen*, 125 Cal. 32 [57 Pac. 681]; 45 C. J., p. 1239, sec. 802.) But the question as to whether that same condition has been adequately shown to have existed at the time of the accident so as to render the evidence admissible, is within the sound discretion of the trial court. (10 Cal. Jur. 861, sec. 141.) The challenged ruling of the court upon the admissibility of the evidence regarding the defective brake was therefore not erroneous. But assuming that more satisfactory preliminary proof should have been required that the brake was in the same condition before and after the accident occurred, the evidence was harmless for the reason that there is adequate proof that the excessive speed of the truck and the driver's inattention to the plaintiff's operation of the bicycle were the proximate causes of the accident. Since there does not appear to be a miscarriage of justice in this case, even though the evidence of the defective brake be deemed to have been erroneously admitted, it is not reversible error under the provision of article VI, section 4½, of the Constitution.

■ The appellants assign as error the refusal of the court to give to the jury that portion of the following instruction offered by them, which is included within the parentheses, to-wit:

"The law of this state provides that the driver of any vehicle, including a bicycle, upon a public highway, before starting, turning or stopping such vehicle, shall first see that such movement can be made in safety, and if it cannot be made in safety, shall wait until it can be made in safety, (and you are instructed that if you find from the evidence that the plaintiff failed to observe this law, and that his conduct proximately contributed in the slightest degree to said accident and his resulting injuries, if any, the plaintiff is not entitled to recover, and your verdict must be for the defendants)."

It was not error to reject the portion of the foregoing instruction contained within the parentheses for the reason that the subject matter therein contained was fully covered by other instructions which were given to the jury. On page 32 of the Clerk's Transcript an instruction appears to have been given in almost the identical language of the preceding charge, as follows:

"The law of this state provides that the driver of a vehicle including a bicycle, within an intersection, intending to turn to the left, shall yield to any vehicle approaching from the opposite direction, which is within the intersection, or so close thereto as to constitute an immediate hazard; therefore, if you should find from the evidence in this case that the plaintiff failed to observe this rule or law, and that his conduct in so doing proximately contributed in· the slightest degree to the accident in question, then the plaintiff cannot recover, and your verdict must be for the defendants."

The jury was also instructed at the request of the defendants that:

"The operator of a vehicle, including a bicycle, must at all times use due care to avoid colliding with· another; he must be ever alert and watchful so as not to place himself in danger."

The jury was further instructed at the request of the defendants that they had affirmatively charged the plaintiff in their answer with contributory negligence, which was

correctly defined. The jury was then charged that contributory negligence of the plaintiff, if proved, "is a complete defense to this action", and that "It is the law of this state that if the plaintiff was guilty of the slightest amount of negligence proximately contributing to said accident and his resulting injuries, if any, he cannot recover," regardless of how guilty of negligence the defendants may have also been. The jury was elaborately and fairly charged with relation to the law of all the issues necessarily involved in this action. Certainly the jury was charged as favorably to the defendants as they may reasonably expect.

 The refusal of the court to give to the jury that portion of the following instruction which was offered by the appellants, hereafter quoted, is assigned as error, to wit:

"It was required of plaintiff at the time and place of the accident in question, to proceed across the intersection in a careful and prudent manner, ever watchful of the direction in which danger was most likely to be apprehended. It was his duty not to close his eyes so far as south bound traffic on El Dorado street was concerned. If you find from the evidence that said plaintiff Flury, had observed the automobile driven by defendant Becskau, approaching at an exceedingly fast rate of speed for that vicinity, then he was no longer entitled to rely upon the presumption that the said defendant Bceskau would comply with the rules of the road, but he was bound to take such reasonable measures as he could under the circumstances to prevent the injury and if you find from the evidence in this case that, measured by these standards, the plaintiff Flury failed to use ordinary care for his own safety, and that such failure proximately contributed in the slightest degree to said accident and his resulting injuries, if any, the plaintiff cannot recover, and your verdict should be for the defendants."

The refusal of the court to give the preceding instruction did not constitute error. The portions thereof which properly announce the law applicable to the facts of this case, were adequately covered by other instructions which were given to the jury. That portion of the preceding instruction which declares that if the plaintiff had observed the defendants' truck "approaching at an exceedingly fast rate of speed for that vicinity, then he was no longer entitled to rely upon the presumption" that he would thereafter re-

duce the speed of his machine to a safe or proper mileage, cannot possibly be the law with relation to the facts of this case. It was therefore properly rejected. The foregoing statement does not assume that the defendants' truck was seen approaching at an unlawful rate of speed. It does not pretend to fix the place or the distance from the point of collision that the truck was seen aproaching at ''an exceedingly fast rate of speed''. The record shows that the plaintiff did see the machine nearly a block away coming at about 25 or 30 miles an hour. Because an automobile is seen approaching an intersection of streets or roadways at a distance of a block and running 25 or 30 miles an hour, neither law nor reason will warrant the assumption that the driver thereof will recklessly continue at that rate of speed across a traffic-filled intersection in defiance of law. That portion of the instruction was properly rejected.

■ The award of damages in the sum of $7,500 does not appear to be excessive under the circumstances of this case, when we consider the serious injuries which plaintiff received, the pain which he suffered, the cost of hospital and medical care, the loss of income and some apparent permanent disability. The plaintiff was picked up unconscious and taken to a hospital where he remained for nearly a month. His nose was broken and is still crooked. His right shoulder-blade was broken and a dislocation of the same shoulder occurred. Three ribs were broken. He suffered a severe scalp wound and a brain injury from which he continued to endure severe headaches and dizziness to the time of the trial of the case. There were numerous bruises and contusions from which he suffered. His arm was kept in a plaster cast for nearly two months. X-ray pictures were taken.

■ A jury is entrusted with considerable discretion in assessing damages for personal injuries including serious fractures of the bones, together with pain and suffering incident thereto. Unless the damages which are assessed appear to be so excessive as to have been the result of passion or prejudice on the part of the jurors, they will not ordinarily be disturbed on appeal. (*Rannard* v. *Harris*, 121 Cal. App. 281 [8 Pac. (2d) 864]; 20 Cal. Jur. 101, sec. 65.)

The amount of the judgment which was rendered in this case appears to be reasonable considering the serious injuries which were received by the plaintiff.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.