[Civ. No. 4086.   Third Appellate District.—November 18, 1930.]

ROBERT O. EVEN, Respondent, v. PICKWICK STAGES SYSTEM (a Corporation), Appellant.

Theodore Hale, Barry J. Colding and B. P. Gibbs for Appellant.

Thomas C. Anglim, L. E. Johnston, Charles Reagh and Martin Pence for Respondent.

MR. JUSTICE Pro Tem. SHIELDS Delivered the Opinion of the Court.—The defendant corporation operated an autostage system during the month of August, 1928, between Clear Lake in Lake County and Ukiah, in Mendocino County. On August 24, 1928, one of the stages so operated by defendant ran off the road, over a steep grade, about eight miles easterly from Ukiah. The plaintiff was a passenger in the stage, and was injured as a result of this accident. He prosecuted this action to recover damages for his injuries, and was awarded a judgment from which this appeal was taken. It is first contended for the appellant that there was no evidence offered which justified the judgment, and that the judgment is without support in the evidence. We think, however, that the record shows the contrary. It appears that the road over which the autostage operated was wide and well surfaced, and that it passed through a mountainous country for almost its entire length. At and approaching where the accident occurred, the road wound, in a series of sharp curves, along a cliff about forty-five feet above a creek or stream which is a tributary of the Russian River. The stage proceeded for some time at the rate of about thirty-five miles per hour. When it reached the "highway" it increased its speed to forty miles per hour. About a mile and a half before reaching the point of the accident, the driver took out and looked at his watch, and then increased his speed. He did not slow up in going around curves. He had been driving about forty

miles per hour, and he increased this speed up to between forty and forty-five miles per hour. Just beyond what is known as the Cleveland bridge, there was an "S" curve, one turn of which was sharp to the left. The driver entered this curve going at the rate of about forty miles per hour, increasing this speed to the point of the accident. One witness testified that just after passing the bridge the stage began going "towards the edge of the bank". The plaintiff testified: "Just after crossing the bridge I noticed he (the driver) was going pretty fast and got off into the soft dirt, and tried to get back into the highway again— just going so fast he couldn't make it, and went over the grade." The speed of the car was such that it went seventy or eighty feet before it struck the bank.

When the car became unmanageable, the driver left the wheel, and sought to leave the stage. He did not use the brakes. The foregoing evidence was presented by the plaintiff. In its defense, the defendant presented the driver of the stage as a witness, who testified that the stage had been in control until just before the accident, when the steering-gear broke, that the car would not respond to the wheel, and that "the wheel spun in his hand" and that "the car turned at a sharp angle, and went over the cliff". In support of this theory, defendant produced the "drag link", a part of the steering apparatus of the stage which was picked up near the scene of the accident by some disinterested party. It is unnecessary here to detail the character or function of this "drag link", it being sufficient to say that it constituted an essential feature of the steering-gear. Defendant then produced a witness who testified that the day before, in Ukiah, he had inspected the autostage involved in this case, and the steering-gear as well, and had found the latter to be in apparent good condition. This evidence was produced for the purpose of showing that the accident had occurred through a defect in the steering-gear, that that defect was latent and that due care had been exercised in an effort to discover such defects. But, in contradiction of the first witness that the stage "turned a sharp angle, and went over the cliff", plaintiff produced two apparently disinterested persons, who testified that they examined the tracks of the car on the curve, and that they led in a straight line, ninety or one hundred feet, to the point

where the stage "went over the cliff". And with reference to the examination or inspection which the witness made, who inspected the stage at Ukiah, the day before the happening of the accident, the cross-examination of this witness developed such details of the examination as made it a question for the jury, whether or not the examination he made was of such a character as to constitute the high degree of care required of a carrier of passengers for hire.

But assuming that there was a latent defect in the part of the steering-gear involved and that the highest degree of care had been exercised by defendant to discover it, and that it had been unable to do so, plaintiff contends that it was still a question for the jury as to whether or not this defect and the subsequent breaking, was the proximate cause of the accident. In this, we think, plaintiff is correct. He had introduced evidence from which the jury could properly have found, and evidently did find, that at the time of the accident the stage was being driven at an excessive rate of speed, and it was for the jury, as between these two causes, the broken steering-gear and the excessive speed, to find which was the proximate one.

The cases of *Johnsen* v. *Oakland etc. Elec. R.*, 127 Cal. 608 [60 Pac. 170], and *Siemsen* v. *Oakland etc. R.*, 134 Cal. 496 [66 Pac. 672], very interestingly state the theories upon which, in such a state of the evidence, the jury may find a verdict for the plaintiff. These theories, in so far as they arise in this case, are very admirably set forth in the brief of respondent herein to the effect that the jury might have found from the evidence that the proximate cause of the accident was the excessive speed at which the stage was operated, if they should deem the stage to have been so operated; that the breaking of the steering apparatus would not have occurred if the car had not been so operated; that the car would not have gone over the bank, notwithstanding the broken gear, if it had been traveling at a safe speed; that the car could have been stopped before going over the bank if the driver, traveling at a safe rate of speed, had applied his brakes; or that the car could have been stopped in any event, if the brakes had been applied. The issues were very properly submitted to the jury and their verdict for the plaintiff is so substantially supported by the evidence that we will not attempt to disturb it.

■ At the conclusion of the trial, at the request of the plaintiff, an instruction was given, the concluding part of which directed that "when it is shown that injury to the passenger was caused by the act of the carrier in operating the instrumentalities employed in its business, there is a presumption of negligence which throws upon the carrier the burden of showing that the injury was sustained without any negligence on its part".

Appellant contends that the use of the word "presumption" in this instruction was erroneous; that it is not a presumption, but an inference which arises in such circumstances. But, an identical instruction with the one given herein, and as above quoted, was given and expressly approved in *Jones* v. *United Railroads,* 54 Cal. App. 744 [202 Pac. 919]. The law was stated to be exactly as stated in this instruction in *McCurrie* v. *Southern Pac. Co.,* 122 Cal. 558 [55 Pac. 324], and an instruction quoting this statement was expressly approved in *Cody* v. *Market Street R.,* 148 Cal. 90 [82 Pac. 666]. The law was again so stated in *Bonneau* v. *North Shore R. Co.,* 152 Cal. 406 [125 Am. St. Rep. 68, 93 Pac. 106, 107], where Mr. Justice Lorigan says that, "this has been the rule in this state for upwards of forty years". It is, however, true that in a later case, where an instruction was requested of the court in which the word "presumption" was used as in the case before us, and where the trial judge changed the word to "inference", the Supreme Court said that this was properly done. (*Dowd* v. *Atlas T. & A. Service Co.,* 187 Cal. 523 [202 Pac. 870].) In announcing this opinion, the court cites *Bonneau* v. *North Shore R. Co.,* above, with approval, and without reference to the decisions above cited, it named, in support of its opinion, *Valente* v. *Sierra R. Co.,* 151 Cal. 534 [91 Pac. 481], where an instruction similar to the one in the case under discussion had been given, using the word "presumption" was approved in that particular, and *O'Connor* v. *Mennie,* 169 Cal. 217 [146 Pac. 674], where the word "presumption" is repeatedly used in the sense criticised in the present case. It is interesting to note that in the very instruction in which in the Dowd case it was held that it was not error to change the word "presumption" to "inference" the word "presumption" is later used in exactly the same sense in which it was used where the

court changed it to the word "inference". In such a state of the law, it certainly cannot be regarded as reversible error for the court to have used the word "presumption" in the instruction given in this case. There is a distinct difference in the meaning of the words "presumption" and "inference". (*Thomas* v. *Visalia Elec. R. Co.*, 169 Cal. 658 [147 Pac. 972].) It may be conceded that the use of the word "presumption" in the instruction under consideration, was incorrect, but if so, the defendant was not injured by it. If the word "inference" had been used, the court would then have directed the jury that if they found the facts as first stated in the instruction, there would then arise an inference of negligence which would throw on defendant the burden of showing that the accident occurred without negligence on its part. As this is all that they were told to require as a result of the presumption stated, no harm was done defendant by its use. In other words, the word "presumption" was used to convey the same meaning and was limited to the same effect as the word "inference" which might properly have been used.

The jury returned a verdict for the plaintiff in the sum of $2,800, of which sum $2,500 was for general damages. Defendant contends that this sum was excessive. There was evidence from which it appears that the plaintiff received a cut in the head which it took six stitches to close; he received a broken rib, and one of his ears was cut, from which a scar remains. He was confined to his home with a physician in attendance for a month or more, and when he returned to the place of his employment, he was not able to do his work as formerly. At the time of the trial, nearly nine months after the accident, the place where his head had been cut was still tender, his chest "bothered him", and he had not recovered the full use of one of his arms. Following the accident, he suffered severe pain, which continued for some time. The amount of damage, which one sustains from pain and suffering and injury such as have been stated, is necessarily difficult of assessment. Verdicts in such cases should not be lightly set aside, and courts of appeal are only justified in interposing their judgment against that of a jury, in extreme cases. The rule in such cases is well stated as follows: "Unless we are able to say that the award of the jury and sustained by the trial

court was so grossly disproportionate to any compensation reasonably warranted by the facts as presented to us on appeal as to shock the sense of justice, and raise at once a strong presumption that it was the result of passion, prejudice or corruption, rather than honest or sober judgment, this court may not exercise the power of revision." (*Kelley* v. *Hodge Transp. System,* 197 Cal. 589 [242 Pac. 76]; *Sellers* v. *Wood Hydraulic etc. Co.,* 205 Cal. 519 [271 Pac. 1055]; *Smith* v. *Royer,* 181 Cal. 165 [183 Pac. 660]; *Gregoriev* v. *Northwestern Pac. R. Co.,* 95 Cal. App. 428 [273 Pac. 76]; *Hasty* v. *Trevillian,* 102 Cal. App. 405 [283 Pac. 148]; *Reneu* v. *Hirsch,* 88 Cal. App. 1 [262 Pac. 1100].)

Under this rule and governed by its wise policy, the award here will not be disturbed.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 18, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 12, 1931.