[Civ. No. 6762. Third Dist. June 16, 1942.]

LUCIEN SCALETTA et al., Plaintiffs and Respondents, v. J. J. SILVA, Appellant; MRS. D. N. CARLSEN et al., Defendants and Respondents.

[Civ. No. 6763. Third Dist. June 16, 1942.]

ROBERT CARLSEN, a Minor, etc., et al., Respondents, v. J. J. SILVA, Appellant.

H. K. Landram for Appellant.

Dante H. Giannini, Chester Damico, Jr., and Chas. V. Barfield for Plaintiffs and Respondents in case No. 6762.

C. Ray Robinson, Willard B. Treadwell, Loraine B. Rogers, W. Eugene Craven and Milo E. Rowell, Jr., for Defendants and Respondents in case No. 6762, and for Plaintiffs and Respondents in case No. 6763.

THOMPSON, J.—The defendant, J. J. Silva, has appealed from judgments which were rendered against him in two consolidated automobile damage cases growing out of successive collisions.

The appellant contends that Mrs. Carlsen, one of the defendants in the first action, was guilty of contributory negligence as a matter of law, for failure to reasonably regulate the speed of her automobile, in view of the admitted fact that, at the time of the accident, she was confronted with the glaring lights of an approaching machine; that the judgment in favor of the plaintiffs in the first action is inconsistent with Mr. Scaletta's testimony absolutely absolving the appellant from all charge of negligence in driving his automobile on the wrong side of the highway at the time of the accident; and that the $10,000 judgment in favor of Gloria Joyce Carlsen is excessive, as shown by the fact that the award of $5,000 to Mrs. Carlsen for injuries asserted to have been much more serious than those sustained by Gloria were assumed by the jury to have fully compensated the mother. In other words, it is contended that neither judgment is sustained by the evidence and that the $10,000 award is excessive. No other awards are challenged as excessive.

The automobile casualty occurred at 7 o'clock in the evening of September 29, 1940, on Pacheco Pass Highway in Merced County, two miles west from Los Banos. It was dark, but it was not raining. At the point where the accident occurred, the highway is substantially level and extends in an easterly and westerly direction. The paved portion of the roadway is eighteen feet in width, with graveled shoulders on either side. Approaching from the east the highway crosses Los Banos Creek over a long bridge with concrete abutments on either side. The surface of that bridge is two or three feet above the level approaches at either end. Three hundred and fifty feet westerly from the Los Banos bridge there is a concrete culvert which is protected on both sides

of the roadway by wooden railings and abutments. Attached to the end posts which support the railings, red reflectors were placed as warnings of the presence of the railings and culvert.

J. J. Silva was driving his Ford automobile westerly along that highway in the vicinity of that bridge. He was accompanied by his wife and daughter. Lucien Scaletta was driving a heavily-loaded Ford truck belonging to Bassoni & Company, a copartnership, of which he was a member, at a distance of about a thousand yards behind the Silva car. At the same time, Mrs. D. N. Carlsen was driving a La Salle Sedan, belonging to her husband and her, in an easterly direction, on her proper side of the highway. She was accompanied by her son Robert, who sat by her side on the front seat, and by her daughter, Gloria Joyce, who was reclining on the back seat. Each of the machines had its headlights turned on. None of them appears to have been running more rapidly than thirty-five or forty miles an hour. As Mrs. Carlsen's car approached the culvert she observed the lights from the Silva car as it came over the Los Banos Creek bridge. She did not then see the culvert or the railings with the warning signals thereon. Suddenly she observed that the Silva machine was running toward her with the left-hand wheels several feet over the white line on her side of the highway. She promptly turned to her right onto the shoulder of the roadway, and at the same time she slackened the speed of her car. The glaring headlights of the Silva machine blinded her vision. She repeatedly signaled to Mr. Silva to dim his lights, which he failed to do. Just then she discovered the reflector on the culvert railing, immediately in front of her machine, and abruptly turned back upon the paved portion of the highway to avoid colliding with the abutment. The appellant's car was then quite near and still traveling far over on her side of the roadway. In the emergency which confronted her, Mrs. Carlsen found scant space within which to pass between the appellant's car and the railing of the culvert on her side of the roadway. In attempting to do this the left front mudguard of her machine struck, or side-swiped the left rear mudguard of the Silva machine. Both of these mudguards were conspicuously indented. This impact caused Mrs. Carlsen to lose control of her vehicle, and it ran across the highway behind the Silva machine, violently crashing into the Scaletta truck,

which was then closely following behind the Silva automobile. The Silva car was only slightly damaged. Silva drove on, claiming that he did not know he had collided with the Carlsen machine. As a result of the last collision, both the Carlsen car and the Scaletta truck were badly demolished. Mrs. Carlsen and her daughter Gloria Joyce were seriously injured. Her son Robert was only slightly injured. Mr. Scaletta also received personal injuries.

Regarding the circumstances leading to the accident, Mrs. Carlsen testified:

"We were driving along at a moderate rate of speed and I saw a car approaching with blinding headlights, and Bob became alarmed because they were undoubtedly on my side of the pavement, and I signalled him . . . to dim his lights and he disregarded the warning and I signalled two or three times, and at that time he was still far enough away I felt that he would get over on his own pavement, and, however, when I realized he wouldn't, I sounded the horn and then it was necessary to get off the pavement onto the shoulder of the road, which I did. And then I proceeded along on the shoulder . . . and my headlights picked up the culvert [reflector signal] and I had to get back on the road to avoid going into the culvert. . . . He was on my side of the road. . . . I remember trying to avoid him and [to avoid] going into the culvert. . . . Well I don't remember anything after that."

As a result of the last collision Mrs. Carlsen was rendered unconscious. She suffered two broken ribs, a fracture of the breastbone, a severe gash in one leg and numerous bruises and contusions.

The foregoing statement of Mrs. Carlsen is substantially corroborated by the testimony of Robert. Gloria said that just prior to the accident their car "slowed down and then I felt us going back and forth in the soft shoulder." She said they then turned back onto the pavement and she immediately felt the impact of side-swiping the first car, and that "within an instant" the second collision occurred. Gloria was violently thrown from the seat and she sustained a broken spine and other serious injuries.

Photographs taken of the location on the highway, opposite the railing of the culvert where the accident occurred, distinctly show the skid marks of the Carlsen car far over on its proper side of the center white line, clearly indicating that Mrs. Carlsen applied her brakes before colliding with the

Silva car. It is true she testified at the trial that she did not remember whether she applied her brakes before the accident occurred. But these photographs furnish substantial evidence from which the jury was warranted in finding that she did apply her brakes. Her lack of recollection of applying the brakes may be accounted for by her excitement due to the critical emergency or to the fact that she was rendered unconscious by the injuries which she received. Gloria also testified that they slowed down before the collision occurred.

Mr. Scaletta, the driver of the truck, and the Bassoni partnership, of which the plaintiff is a member, brought suit against J. J. Silva and Mr. and Mrs. Carlsen, for personal injuries sustained by him and for damages to their truck, as the result of the defendants' concurrent negligence. To that complaint Mr. and Mrs. Carlsen filed an answer denying the essential allegations of the pleading. They also filed a cross-complaint against Mr. Scaletta, the Bassoni partnership and J. J. Silva for personal injuries sustained by Mrs. Carlsen, and for damages to their La Salle automobile caused by the concurrent negligence of both Scaletta and Silva. Subsequently Robert and Gloria Joyce Carlsen, by their guardian ad litem, and D. N. Carlsen, individually, brought an independent suit against J. J. Silva, Lucien Scaletta and the Bassoni partnership, for damages to the Carlsen sedan and for personal injuries received by their children. These suits were consolidated and tried with a jury. At the close of the evidence, on motion, a nonsuit was granted in the first suit, in favor of the cross-defendants, Lucien Scaletta, the Bassoni partnership, and the individual members thereof. The record discloses no negligence on their part. Several verdicts were returned and two judgments were accordingly rendered as follows:

(1) Judgment was rendered against J. J. Silva, in favor of Lucien Scaletta, for personal injuries received by him, in the sum of $500, and for costs of suit;

(2) Judgment was rendered against J. J. Silva, in favor of the Bassoni partnership, and the individual members thereof, for damages to their truck in the sum of $975.50, and for costs of suit;

(3) Judgment was rendered against J. J. Silva, in favor of the cross-complainants Mr. and Mrs. Carlsen, based on their cross-complaint, for personal injuries received by Mrs. Carlsen, in the sum of $5000, and for costs of suit; and

(4) Judgment was rendered against J. J. Silva, in the second suit, in favor of the guardian of the minor children of Mr. and Mrs. Carlsen, Robert and Gloria Joyce, for personal injuries received by each, in the sum of $10,000 to compensate Gloria, and in the sum of $200 to compensate Robert, together with the costs of suit.

Motions for new trials were denied. From the foregoing judgments J. J. Silva has appealed.

■ There is ample evidence to support the implied finding of the jury that J. J. Silva, the defendant and cross-defendant in those suits, was guilty of negligence which became the proximate cause of the accident. The preceding quoted evidence sufficiently shows that Mr. Silva approached the scene of the accident on the wrong side of the paved portion of the highway and that he failed to dim his glaring headlights after repeated signs from Mrs. Carlsen to do so. The jury was warranted in finding that these glaring headlights obscured her view and prevented her from seeing the exact location of his automobile which contributed to the cause of the first collision. Certainly the jury was justified in finding that the first collision would not have occurred except for the fact that Silva's car was traveling with its left-hand wheels several feet over on the wrong side of the paved portion of the highway. The second collision occurred as a result of the first impact. These facts sustain the finding of negligence on the part of the appellant.

■ It is reasonable to assume that the blinding lights of Silva's machine, and the impact with his car, caused Mrs. Carlsen to lose control of her own automobile, resulting in her second collision with Scaletta's truck, which followed closely behind the Silva car. The findings and judgment are fully supported in determining that Scaletta was free from negligence. No evidence of negligence on his part is disclosed by the record. The court therefore properly granted a nonsuit in favor of Scaletta and the partnership, upon the cross-complaint in the first action.

■ It was the sole province of the jury, under the circumstances of this case, to determine the questions as to whether Mrs. Carlsen was guilty of either negligence or contributory negligence. In view of the conflicting evidence, we may not say, as a matter of law, that she was guilty of negligence in the first action, or of contributory negligence with reference to her cross-complaint in the first action or of negli-

gence of either character under the complaint in the second suit. There is substantial evidence that when she first observed Mr. Silva's automobile approaching with glaring headlights, on the wrong side of the paved portion of the highway, she repeatedly signaled him to dim his lights. She had a right to assume that, upon warning from her, he would comply with the law and return to his proper side of the highway. She exercised reasonable precaution in repeatedly warning him in that regard, and in then reducing the rate of speed of her machine and in promptly driving off the paved portion on the shoulder of the highway. She had not previously seen the abutment or the culvert which she was approaching. When she was suddenly confronted with that danger, warned by the reflector on the post of the railing, she promptly turned her car back upon the paved portion, and applied her brakes. This is indicated by the skid marks on her side of the paved portion. She assumed she could safely pass between the southerly railing and the Silva machine. The evidence shows she was running at a "moderate rate of speed." She even slackened her speed and applied her brakes at that time. There is no evidence that she might have avoided the accident by stopping her machine on the shoulder when she discovered the imminent danger and the presence of the reflector on the post. She may have been too close to that obstacle to have stopped without crashing into the railing. The burden was on the appellant to prove that she was guilty of contributory negligence for failure to stop her automobile instead of turning it back upon the highway. She was confronted with imminent peril. In that emergency she may not be held accountable for the same degree of care or the exercise of the same sound judgment which would be required under ordinary circumstances. (*Hill* v. *Peres,* 136 Cal. App. 144, 148 [28 P. (2d) 944].) The jury found that she was free from contributory negligence in that regard and we are bound by that determination.

 The appellant, J. J. Silva, contends that the judgment against him in the first action, and in favor of Scaletta and the partnership, for injuries sustained by Mr. Scaletta, as well as for damages to their truck, is inconsistent with the testimony of Mr. Scaletta, who, they contend, completely absolved Mr. Silva from all negligence. It is asserted Scaletta testified that Silva's machine which was preceding his truck was not traveling on the wrong side of the highway. There is no

merit in this contention. We are of the opinion Scaletta's evidence may not reasonably be so construed. He testified in that regard as follows:

"Q. Now Mr. Scaletta, you said that you saw the light, the tail light of a car on the highway ahead of you? A. Yes. . . . I was just coming off of the big bridge . . . when I first knew there was a car up ahead of me. . . . Q. And what portion of the highway was that tail light on at that time? A. Well, *that I can't say* because I wasn't, it was dark so that I couldn't see the whole car, but the tail light seemed to be ahead of me. . . . Q. Yes, and on what portion of the highway was it? A. Well, it must have been in line with me. Q. Yes. Well, in other words, it was directly ahead of you, was it not? A. Well, yes, more so. Q. And on your side of the highway? A. Well, if the lights was ahead of me, I imagine it was on my side. . . . *I never kept my eye on it.* I knew it was there and *I never paid any more attention to it, whether it stayed there or not."*

Mr. Scaletta did not positively testify that the Silva machine was traveling on the northerly side of the paved portion of the highway. His truck was then traveling behind the Silva car at a distance of one hundred yards or more. In effect, he merely said the machine appeared to be straight ahead of his truck. But he did not continue to watch it. He "never paid any more attention to it." He did not pretend to know whether it continued to travel in that same line or not. He did not state its position with relation to the white center line. Such evidence may not be held to overcome the positive testimony of both Mrs. Carlsen and her son Robert that Silva's machine was approaching their car on his wrong side of the paved portion. At least we are bound by the conclusion of the jury in that regard.

We may not hold, as a matter of law, that the award of damages, in the sum of $10,000, as compensation for the injuries sustained by Gloria Joyce Carlsen, is excessive. No other award of damages is challenged as excessive. Gloria sustained three fractured vertebrae and other spinal injuries. She was confined to a hospital for a considerable period of time. She was required to wear a plaster cast for several weeks, even after she returned to school. She suffered great pain during several months. On account of her injuries she was required to abandon six of her regular units at school.

The fact that Mrs. Carlsen sustained two broken ribs, a fractured breast bone, a five-inch cut on one leg and a number

of abrasions and bruises, for which she was awarded only the sum of $5000 damages furnishes no evidence that the award of $10,000 for the injuries received by Gloria on account of her broken back is excessive. There is no reasonable comparison between fractured ribs and a broken back. The latter is much more apt to leave serious and permanent results. Moreover, the award to Mrs. Carlsen might be deemed to be inadequate. ▇ It has been frequently held that the amount of money which will adequately compensate one for particular injuries received as the result of an accident, together with the pain and suffering incident thereto, rests largely in the sound discretion of the jury. This discretion may not be interfered with unless it clearly appears that the award is so grossly excessive as to shock the conscience and to enforce the conclusion that it was the result of passion and prejudice on the part of the jury. (*Rannard* v. *Harris,* 121 Cal. App. 281, 286 [8 P. (2d) 864] ; *Armstrong* v. *Ford,* 30 Cal. App. (2d) 347, 351 [86 P. (2d) 385] ; 20 Cal. Jur. 101, § 65.)

The judgments are affirmed.

Adams, P. J., concurred.

A petition for a rehearing was denied July 16, 1942, and appellant's petition for a hearing by the Supreme Court was denied August 13, 1942.