[Civ. No. 7080. Third Dist. Mar. 27, 1945.]

JOHN A. MILLER, Respondent, v. PACIFIC CONSTRUCT-ORS, INC. (a Corporation) et al., Appellants.

534

Carr & Kennedy and Laurence J. Kennedy for Appellants.

John A. Spann and L. C. Smith for Respondent.

THOMPSON, J.—The defendants have appealed from a judgment of $30,000, which was rendered against them in a jury case, as damages for personal injuries received as the result of being thrown from a ladder to the bottom of a twenty-five foot concrete shaft in the structure of the Shasta Dam. While the plaintiff was engaged in the performance of his duties as an employee of the United States Bureau of Reclamation, after climbing a ladder to the top of the shaft to enter an adjoining gallery to obtain the temperature of the concrete walls, he grasped a horizontal beam attached to a wooden bulkhead built by the contractor and placed across the entrance to the gallery. The bulkhead had an opening through which the workmen passed. It was constructed of green timbers which evidently thereafter shrank. It was in the nature of a lattice structure. The two horizontal bars of the bulkhead were held to the side walls only by driving wooden wedges between the ends of those timbers and the concrete. It was not otherwise secured in place. The plaintiff had frequently entered the gallery in that manner. He had no knowledge of the fact that the timbers had shrunk and that the bulkhead had loosened from the walls. The wooden wedges were in place and the bulkhead appeared secure. As he seized the crossbar and attempted to pull himself up from the top of the ladder to the floor of the gallery, the entire bulkhead became dislodged and fell upon him, throwing him from the ladder to the bottom of the shaft, as a result of which he was seriously and permanently injured. The defect which

rendered the bulkhead insecure and dangerous was not visible or obvious to him.

This suit was commenced against the contractor and his general superintendent and assistant superintendent. The defendants demurred to the complaint for alleged uncertainties and because it failed to state facts sufficient to constitute a cause of action. The demurrer was overruled. The defendants answered denying the material allegations and affirmatively supplied certain alleged defects of the complaint.

The defendant, Pacific Constructors, Inc., was engaged in building a large portion of the Shasta Dam pursuant to contract, dated July 6, 1938, with the United States Bureau of Reclamation, under the Department of the Interior. The structure is located in Shasta County in what is known as the Kennett division of the Central Valley project. The contract price exceeded $35,000,000. Article 6(a) of the contract reserved the right of the government by its agents to inspect and test any and all portions of the structure at any time or place and to reject or replace defective materials or workmanship. Article 10 of the contract provides that:

"The contractor shall, without additional expense to the Government, obtain all required licenses and permits and *be responsible for all damages to persons or property that occur as a result of his fault or negligence in connection with the prosecution of the work, . . .* " (Italics added.)

The defendants, Crowe and Bryant, were superintendent and assistant superintendent, respectively, of the construction company.

At the time of the accident, on August 12, 1942, the plaintiff was performing his duties as an employee of the Bureau of Reclamation, as a "cooling inspector" with the duty to ascertain the temperatures of the concrete walls by attaching a portable meter to wires embedded in the concrete in various chambers of the dam. In the plan of construction of the dam numerous vertical shafts, called "stairwells" with connecting galleries were provided throughout the concrete walls, on each twenty-five foot level, from the elevation of 475 feet upward to the 950 foot level. Those levels were segregated into so-called "blocks." The concrete, vertical, stairwells were six feet in diameter and 25 feet in height. At the tops thereof galleries six feet wide and six feet high were connected with the shafts. There were openings communicating with these galleries from the outside wall of the dam. The walls of the

shafts and galleries were constructed of solid concrete. There were also entrances to the galleries from the inside.

On August 12, 1942, on which date the accident occurred, the plaintiff entered the vertical stairwell at the bottom on the 925 foot level in block 14, through the inside lower gallery, according to his usual custom, for the purpose of ascending the stairwell by means of the ladder, to the upper gallery to test the temperatures of the walls therein. He carried a 15 pound meter suspended on a strap thrown over his shoulder. That stairwell was equipped with a wooden ladder supplied by the contractor for the use of workmen. It extended from the floor upward toward the gallery a distance of 23½ feet. It was too short to reach the floor of the gallery. It lacked a foot and a half of reaching that level. It was braced against the wall of the shaft by means of two timbers attached midway to the ladder and extending at right angles to the opposite wall of the shaft. The ladder was not otherwise fastened to the wall. The floor of the upper gallery consisted of smooth concrete. Across the inside entrance to that gallery there was constructed and maintained by the defendants the wooden bulkhead previously mentioned, which was built with green timbers. It extended from wall to wall across the entrance to the gallery at a distance of a foot and a half from the edge of the stairwell. That bulkhead was built with two horizontal cross timbers two by six inches in size extending from wall to wall on either side and nailed to two upright timbers about five feet in height. The lower horizontal bar was about a foot and a half from the floor. This left an opening in the center of the lattice bulkhead about two and a half feet in size, large enough for a man to pass through into the gallery. The bulkhead was held in position, as we have previously said, only by driving wooden wedges between the ends of the two horizontal timbers on either side and the concrete walls. It was not otherwise fastened to the walls. It is contended the plans prohibited the use of nails or bolts with which to fasten the bulkhead to the walls of the gallery. The appellants also assert that plaintiff was guilty of contributory negligence in failing to use a safe way to enter the gallery by means of an opening in the outer wall of the dam which made it unnecessary for plaintiff to enter the gallery by climbing the ladder in the stairwell and passing through the opening in the lattice bulkhead. There is evidence of the existence of an outer entrance, although the evidence is conflicting as to whether plaintiff had knowledge of that fact or

whether it was reasonably safe. Mr. Crowe testified that the ladder was not placed in the stairwell or the bulkhead in the gallery for use of workmen as a means of entering the gallery. He said: "The bulkhead was there as a barrier to keep people out of that well;" it was intended as a complete barrier. He did, however, admit that he did not know that workmen had been instructed not to use the ladder or the bulkhead.

The plaintiff testified that he had always previously used that ladder and bulkhead in entering the gallery; that he had used them at least fifteen previous times; that other workmen used them for that purpose; that he had never been told not to use them, and that he had no knowledge that the other outer opening was intended for that purpose or that it provided a safe entrance to the gallery. Mr. Henry G. Bozovich, who was employed by the construction company as an engineer and pipe fitter, testified to the frequent use of the ladder and bulkhead by himself and other workmen as a means of entering the gallery. He said he had discussed that subject with plaintiff. Witnesses for the defendants testified that the bulkhead was placed in the gallery to prevent people from walking off the floor and falling into the stairwell. The plaintiff testified that he had reported to defendants that the ladder was too short to reach the gallery and that the opening through the lattice bulkhead was not large enough for convenient access to the gallery, but that he had never discovered that the bulkhead was loose or insecure; that while he had seen the wedges at the ends of the horizontal timbers he supposed the bulkhead was otherwise securely fastened to the walls. Bozovich testified that he had entered the same gallery in the same manner the day before the accident and that it then seemed perfectly secure. The plaintiff also said, in effect, that he did not know the bulkhead or wedges were constructed with green timbers. When the plaintiff grasped the lower horizontal bar of the bulkhead and attempted to pull himself up to the floor of the gallery, the entire bulkhead was dislodged and fell upon him. Both the bulkhead and the plaintiff fell to the bottom of the stairwell. The props which supported the ladder against the wall were dislodged, and the ladder tipped over against the opposite side of the shaft. The plaintiff was seriously and permanently injured.

The jury returned a verdict in favor of plaintiff for the sum of $30,000. Defendants' motions for nonsuit, for judgment notwithstanding the verdict, and for a new trial were

denied. From the judgment which was rendered pursuant to the verdict and from the orders denying the motions for judgment notwithstanding the verdict the defendants have appealed.

The appellants contend that the judgment is not supported by the evidence for the chief reasons that it does not appear they were negligent in performing or in failing to perform any duty toward plaintiff which the law requires, and because the alleged defects in the ladder and the bulkhead, which may have proximately caused the accident, were visible and obvious to plaintiff, and therefore rendered him guilty of contributory negligence precluding him from the right to recover damages. The appellants also assert that the court erred in giving to the jury and in refusing certain instructions, and that plaintiff's attorneys were guilty of prejudicial misconduct in their opening statement to the jury and in disclosing to the jury on examination of a witness the magnitude of the contract for constructing the dam. It is also claimed the complaint fails to state facts sufficient to constitute a cause of action and that the court therefore erred in overruling the demurrer and in denying defendants' motions for a nonsuit, for judgment notwithstanding the verdict and for new trial. Finally, it is insisted that the amount of damages for which the verdict was returned is excessive.

■ We are of the opinion the complaint sufficiently states a cause of action for damages against the defendants, and that the demurrer was properly overruled. It was not necessary to allege affirmatively that the injuries sustained were the result of a *latent defect* in the structure on the gallery at the top of the vertical tunnel from which the plaintiff fell, or that the defect was known to the defendants and unknown to plaintiff. ■ The relationship existing between the plaintiff and the defendants is sufficiently alleged. If there be an omission in that regard it is supplied by the allegations of the answer and the case was tried on the theory that the answer presented that issue. ■ The complaint alleges that Pacific Constructors, Inc., was engaged as a contractor in constructing the Shasta Dam and that the codefendants Crowe and Bryant were employed by that company as superintendent and assistant superintendent, respectively, with control and supervision over the structure in question; that the plaintiff was employed by the Bureau of Reclamation and was engaged in the course of his employment at the time of the accident, and that while so employed in "the use of said ladder and

bulkhead and said stairwell and tunnel,'' on account of defendants' negligence in constructing and maintaining the same ''said bulkhead and braces . . . gave way and broke loose while plaintiff was using the same, causing plaintiff to fall from the top of said stair-well at the 950 foot level to the 925 foot level,'' causing the injuries described in the complaint.

Regarding the relationship of plaintiff to his employer, United States Bureau of Reclamation, as alleged in paragraph V of the complaint, the answer recites that:

''The ladder and the wooden bulkhead mentioned and described in said paragraph [III of the complaint] *were constructed and maintained* by the defendant Pacific Constructors, Inc., under the supervision, direction and control of the Contracting Officer of the Government of the United States *and the employees of the Bureau of Reclamation having charge of the supervision and inspection of the work to be done by said defendant under the contract aforesaid.''* (Italics added.)

The appellants concede that the plaintiff was employed by the Bureau of Reclamation ''to read thermometers in the galleries throughout the dam,'' and to report to that bureau. The answer further alleges that the bulkhead, the dislodging of which caused the accident, was constructed ''for the purpose of protecting and guarding persons passing through said gallery from the danger of falling into the shaft. . . .'' It is contended by the appellants that it was part of plaintiff's duty to inspect that structure and to report to the bureau any defects that may have existed.

The pleadings therefore adequately allege in general terms that the plaintiff was rightfully on the premises in the performance of his duties as an employee of the Bureau of Reclamation for which bureau the defendants constructed and maintained the bulkhead and ladder.

Negligence may be alleged in general terms. It is sufficient if the complaint discloses a duty on the part of the defendant to reasonably protect the plaintiff against the danger and injury complained of, his failure to do so and that the injuries were sustained as a result of that omission. It is not proper to allege evidentiary matters. All that is required of the plaintiff, even as against a special demurrer, is to allege in the complaint the essential facts with such particularity and definiteness as to inform the defendant of the relationship of the parties and the nature of the cause which would create his liability for negligence. (*Goldstein* v.

540

*Healy,* 187 Cal. 206 [201 P. 462]; 4 Bancroft's Code Pleading, § 2037, p. 3534; 38 Am.Jur. § 261, p. 951; 19 Cal.Jur. §§ 91 and 96.) That rule is particularly applicable with respect to facts peculiarly within the knowledge of the defendant. (*Tietke* v. *Forrest,* 64 Cal.App. 364 [221 P. 681]; 38 Am.Jur. § 262, p. 954.) �In It is not necessary for the plaintiff to allege that he was free from contributory negligence, or to anticipate matters of defense, or to allege specifically that the defendant had knowledge of the defects which are asserted to have caused the injuries complained of. (*Pigeon* v. *W. P. Fuller & Co.,* 156 Cal. 691 [105 P. 976]; 4 Bancroft's Code Pleading, § 2041, p. 3541.) ▍ When the complaint does allege facts from which it appears that the defect which caused the injuries was plainly visible and obvious then the plaintiff must allege appropriate facts to explain why he did not see or have knowledge of such obvious defect. (*Shanley* v. *American Olive Co.,* 185 Cal. 552 [197 P. 793].) ▍ Defects which are ordinarily plainly visible do not necessarily preclude a party who is injured thereby from recovering damages for negligence provided a reasonably prudent person exercising due precaution under similar circumstances would not have observed the defect. (*Locke* v. *Red River Lumber Co.,* 65 Cal.App.2d 322 [150 P.2d 506].) ▍ In the present case the defect or omission to securely fasten the bulkhead, the dislodging of which caused the accident, was not visible or obvious. The complaint alleges no facts from which it could be deemed to be visible and obvious. If it was the duty of the defendants who constructed and maintained that bulkhead in the exercise of reasonable care to see that it was securely fastened, either by inspection or otherwise, then the burden was on them to show, as a matter of defense, that such ordinary care was used by them in order to relieve them from liability. The evidence indicates that the defect which caused the bulkhead to be dislodged was the shrinking of the horizontal bars and the wedges which were inserted between the ends of the parallel timbers and the concrete walls on either side. The wedges were in place at the time of the accident and the defect was not visible or obvious. In the Shanley case, *supra,* upon which the appellants rely in support of their contention that the complaint is insufficient because it failed to excuse the negligence of plaintiff in failing to see and appreciate a danger which is plainly visible, the facts related were radically different from those of the present action. In

that case judgment for the defendant was rendered on the pleadings after the answer had been filed. On appeal that judgment was affirmed. The defendant constructed a warehouse 40 feet wide and 38 feet long, so close to the track of the Pacific Railway Company, for whom the plaintiff worked as a switchman, that it left a clearance between the adjacent wall of the building and the side of a passing car of only four to six inches. It was broad daylight. The plaintiff knew the danger of that situation. He had been employed by the railway company on that track for some time. He was caught between the wall of the building and the moving car while he was climbing a ladder upon the side thereof. The danger was visible, obvious and known to the plaintiff. The court quite properly said that, under such circumstances "one would have to shut his eyes, or fail to look in that direction, to avoid seeing it," and that the owner of the building "is entitled to assume that such invitee will perceive that which would be obvious to him upon the ordinary use of his own senses." In that case the answer did not supply allegations or tender issues which cured necessary omissions of the complaint. The case was not tried. The defendant stood upon the pleadings as they were filed and moved for judgment, which was granted. We assume that complaint was defective for the reasons stated by the Supreme Court. That authority is not determinative of the issue of defective pleadings in this case, in which a visible and obvious defect did not exist and which therefore was not alleged.

The only defect of substantial merit in the complaint in this case is the failure to allege the contractual relationship between the defendants and the United States Bureau of Reclamation for which the plaintiff worked in testing and reporting to the bureau the temperatures of the tunnels connected with the dam to determine the state of the curing or cooling of the concrete. The complaint alleges that plaintiff was an employee of the Bureau of Reclamation, and that he was engaged in the course of his employment at the time of the accident. If the omitted allegation of relationship of the parties is deemed to be a necessary allegation to state a cause of action for negligence against the defendants, it was supplied by paragraph V of their answer and the cause was tried on the theory that the defendants were building the dam as contractors for the United States Bureau of Reclamation which reserved the right and authority to hire representa-

tives who were entitled to enter the tunnels to secure and report to the bureau the temperatures as stated. That contractual relationship is alleged in the answer. Indeed, the defendants alleged that the bulkhead in question was "constructed and maintained by the defendant Pacific Constructors, Inc., under the supervision, direction and control of the Contracting Officer of the Government of the United States and the employees of the Bureau of Reclamation having charge of the supervision and inspection of the work to be done by said defendant under the contract aforesaid."

The case of *Hauser* v. *Pacific Gas & Electric Co.*, 133 Cal. App. 222 [23 P.2d 1068], relied upon by appellants, involved injuries sustained by plaintiff when electricity was transmitted to his body from a high power wire through the boom of a hay derrick which he was driving beneath the wire alleged to have been negligently maintained by the defendant at an insufficient height from the ground to safely permit the passage of the derrick. The undisputed facts of that case are substantially the same as those of *Royal Insurance Co.* v. *Mazzei*, 50 Cal.App.2d 549 [123 P.2d 586]. The wire was clearly visible and obviously so close to the ground as to warn a reasonably prudent person that it was dangerous to attempt to drive beneath it. The plaintiff was therefore guilty of contributory negligence.

In the case of *Murphy* v. *St. Claire Brewing Co.*, 41 Cal. App.2d 535 [107 P.2d 273], relied upon by appellants, a judgment for plaintiff was affirmed on appeal. The principle that visible, obvious defects will bar a plaintiff from recovery of damages was correctly stated in that case. The question of whether plaintiff was guilty of contributory negligence under the circumstances of that case was held to be a matter for the determination of the jury, with which conclusion the reviewing court may not interfere when there is a conflict of evidence regarding that subject. The plaintiff was a motorman employed by the streetcar company. He was riding as a passenger on a streetcar when the accident occurred. In the middle of a block defendant's beer truck was parked diagonally opposite a loading zone contrary to the provisions of a city ordinance, with the end of the truck dangerously near the track. The plaintiff was standing on the rear platform of the car preparatory to leaving the car. Without knowing of the presence of the truck he extended his head beyond the side of the car and was immediately struck by the rear corner of the truck. While the truck was obviously dangerously close

to the moving car, the plaintiff was unaware of that fact. The appellate court correctly held that the implied finding of the jury that plaintiff was not guilty of contributory negligence was supported by the evidence. That case is not favorable to the appellants in this action.

The cases cited and relied upon by the appellants, including the case of *Royal Insurance Co.* v. *Mazzei, supra,* are based upon pleadings which disclosed visible and obvious defects which should have been readily seen by the plaintiffs. That is not the situation in the present case. In the Royal Insurance Company case, *supra,* judgment of dismissal of the action in favor of the defendant was affirmed on appeal. In that case the complaint alleged that the defendant negligently maintained a high power electric wire across a lane on his property "within dangerous proximity and at an insufficient height from the ground," and that plaintiff was moving a derrick across the corral when the boom extending upward therefrom came in such close contact with the wire as to cause a circuit of electricity through the boom, from which he was injured. That judgment was affirmed on the ground that the wire was visible and obvious to the plaintiff who, by the exercise of reasonable care, should have avoided bringing the boom of his derrick in contact therewith. There was neither pleading nor proof that the wire was maintained at a height from the ground in violation of either an ordinance or statute. That case is not in point. No such obvious defect was alleged or proved in the present case.

The defendants were not misled or prejudiced by the omission in the complaint to state the relationship between them and the Bureau of Reclamation, for they supplied that defect by affirmatively alleging in their answer that they were constructing the dam under contract with the United States Bureau of Reclamation. The defendants did not elect to stand upon the pleadings as they existed after the demurrer was overruled. They elected to answer the complaint and to go to trial on the issue as to whether they were liable to plaintiff for the injuries he sustained. The jury was instructed at the request of defendants upon the essential issues presented by the complaint and the answer. A verdict and judgment were rendered on the merits. The defect of the complaint therefore became immaterial. (*Noakes* v. *City of Los Angeles,* 179 Cal. 38 [175 P. 409]; *Hunceker* v. *Lutz,* 65 Cal.App. 649 [244 P. 1001]; *Martin* v. *Southern Pacific Co.,* 44 Cal.App. 3,

14 [185 P. 1030]; *Fay* v. *Cox*, 45 Cal.App. 696, 699 [188 P. 623].)

In the Martin case, *supra*, it is said in that regard, quoting with approval from *Daggett* v. *Gray*, 110 Cal. 169, 172 [42 P. 568]:

" 'The rule is well settled that a complaint which lacks the averment of a fact essential to a cause of action may be so aided by the averment of the fact in the answer as to uphold a judgment thereon, even though a demurrer to a complaint for want of this fact had been erroneously overruled.' "

In the Noakes case, *supra*, the Supreme Court said:

"We need not follow counsel for appellants in their discussion of the alleged infirmities of the complaints, because by their answers, their proposed instructions, and the testimony offered they put squarely in issue the matters which, according to their present contention, were not set up by the complaints."

Likewise, it is said in the Hunceker case, *supra*:

"The defendants, however, after the overruling of their demurrers, proceeded to file answers, not simply denying the allegation of the plaintiff's complaint, but, proceeding to set up affirmative defenses, . . . and then prayed judgment of the trial court . . . thus tendering issues for the trial court to hear and determine. Under such circumstances and in this state of the pleadings the error of the court in overruling the appellants' demurrers became immaterial."

For the foregoing reasons the failure of the plaintiff to allege in his complaint the relationship of the parties, and the error of the trial court in overruling defendants' demurrer are harmless and immaterial.

We are of the opinion the judgment is adequately supported by the evidence. The plaintiff was not a mere licensee on the premises. He was an employee of the Bureau of Reclamation and engaged in the actual performance of his duty in testing and procuring the temperatures of the concrete in the walls of the galleries, to determine the state of the curing. The contract with defendants specifically reserved the right of the United States Bureau of Reclamation and its agents at all times and places to inspect and test all portions of the structure. The contract provides that the contractor shall become "responsible for all damages to persons or property that occur as a result of his fault or negligence in connection with the prosecution of the work." The defendants

knew of plaintiff's employment and of his duties and they acquiesced in his free access to the premises for that purpose. In effect, the relationship between the contractor and the plaintiff was equivalent to that of invitor and invitee for the mutual benefit of both parties. Under such circumstances the contractor was bound to exercise ordinary care to provide the plaintiff with reasonably safe places in which to perform his work, and with reasonably safe appliances for him to use in connection with such employment. ■ The general rule in that regard is that an owner or occupier of premises, who, by invitation express or implied, whether the invitation is pursuant to a written contract or otherwise, induces, or knowingly permits, a workman to enter the premises for the performance of duties mutually beneficial to both parties, is required to use reasonable care to protect the workman by supplying him with a reasonably safe place in which to work and to furnish and maintain appliances in connection therewith which are reasonably safe for the purposes embraced therein. (*Mayes* v. *Splitdorf Electrical Co.,* 94 N.J.L. 460 [111 A. 10].)

■ It is true that a contractor is not ordinarily liable for injuries sustained by a workman as a result of defects which are clearly visible or obvious to him, or when he has actual or constructive knowledge of the existence of such defects. Numerous cases so hold. Many are cited by the appellants. That principle is so well established that it requires no authorities to support the doctrine. ■ But it is equally well settled that a workman is not charged with knowledge of a latent or concealed defect and that he may recover damages resulting from such latent defect of which he has no knowledge, provided the employer or licensor knew, or by the exercise of reasonable care should know of such defect and fails to remedy or warn the workman of that danger.

■ We may assume that the plaintiff in this case did have actual knowledge of the fact that the ladder in the stairwell where the accident occurred was too short to reach the floor of the gallery he attempted to enter, and that, if the ladder of inadequate length was the sole proximate cause of the accident, he could not recover damages, on account of his own contributory negligence in using that defective ladder. But we assume that was not the immediate cause of the accident. The implied finding of the jury, and there is substantial evi-

dence to support that finding, is that the proximate cause of the accident was defendants' failure to reasonably secure the bulkhead, at the entrance into the gallery, to the side walls. There is evidence that it was negligently constructed of green lumber which shrank. It was held in position by merely driving wooden wedges into the spaces between the ends of the horizontal bars and the concrete walls. The shrinking of the timbers and the wedges was not visible or obvious to the plaintiff nor could that defect have been reasonably anticipated by him. The wedges filled the spaces at the ends of the timbers, and concealed the gradually widening crevices. The contractor, under whose supervision the bulkhead was built and maintained, should have anticipated that green lumber would naturally shrink in time. The defendants made no inspection of that bulkhead to ascertain whether it remained securely fastened to the walls.

There is a sharp conflict of evidence regarding the cause for the insecurity of the bulkhead, but we think there is sufficient proof to support the implied finding of the jury that the defendants were negligent in constructing the bulkhead and wedges of green lumber and in failing to properly inspect that structure to determine that it remained reasonably safe.

For the foregoing reasons it follows that the plaintiff may not, as a mere matter of law, be held to be guilty of contributory negligence. He testified that he had no knowledge of the insecurity of that bulkhead. He had previously frequently ascended the ladder and entered that same gallery in the same manner he attempted to do at the time of the accident. Before the time of the accident he had discovered no evidence of the insecurity of the bulkhead. He said that he observed the wedges but believed that the structure was otherwise securely fastened to the wall. He did not know that it was built of green lumber or that it had loosened by the shrinking of the timbers. We may not hold as a matter of law that he was charged with knowledge of that defect. The defect was not visible or obvious to him.

The appellants earnestly contend that the bulkhead was constructed and maintained as an absolute barrier to prevent workmen from entering the gallery from the stairwell, and that its presence was notice to that effect. The implied findings of the jury were adverse to the appellants on that issue. There is substantial evidence to support such im-

plied findings. In support of the judgment and those implied findings it may be suggested the plaintiff and other workmen, with the knowledge of defendants, and without objection, previously and repeatedly used the ladder in the stairwell and the lattice bulkhead as a means of access to the gallery. Mr. Bozovich so testified. Mr. Crowe testified that it was constructed to prevent workmen from walking from the floor of the gallery and falling into the stairwell. If the bulkhead had been intended as an absolute barrier to prevent workmen from entering the gallery from the stairwell it might have been reasonably built solidly of boards so as to prevent a person from passing through the bulkhead. Or additional horizontal bars could have been inserted to accomplish that same purpose. Moreover, the fact that it was built in lattice form with a convenient opening large enough for a workman to pass through it, and that it was placed a foot and a half from the edge of the floor of the gallery, furnishing a person with a convenient landing shelf in ascending the ladder from the stairwell, warranted the jury in finding that it was not intended as notice of an absolute barrier to prevent access to the gallery in that manner. There is a conflict of evidence upon that issue, but we are of the opinion there is adequate evidence to support the judgment and the findings of the jury to the effect that plaintiff had no notice or knowledge that the bulkhead was intended as a barrier or that workmen were prohibited from entering the gallery in that manner. The presence of the ladder and the lattice bulkhead furnish some evidence of an invitation to use them just as the plaintiff and other workmen customarily did use them.

Nor do we think the plaintiff should be held guilty of contributory negligence for failure to use the opening from the outer wall at the other end of the gallery, instead of the manner in which he did approach it, on the theory that he elected to use a dangerous passageway when a safe entrance had been provided. He had neither been told of the other opening to the gallery nor had he been instructed to use it. He, and other workmen, on many occasions, had used the stairwell and lattice bulkhead as a means of access to the gallery. He did say that he once went to that other opening from the gallery and discovered that there was a little plywood door leading to a "catwalk" or platform outside. He said he had not been told he could or should use that entrance

to the gallery, and he never did so. Regarding his knowledge of that alleged safe entrance, this colloquy occurred:

"Q. It was a door? A. Well, the end was sealed up and the portion of it was movable there so a person could go out. Q. Did you ever go out there in the 950 [level], outside of the gallery itself onto any platform? A. No sir, I did not. Q. Did you ever go out onto any platform at the end of the 900 foot gallery? A. No sir. I say that I opened the door to see what was out there and there was all this material being thrown over there and so much water coming out there I didn't go out."

It was solely the province of the jury to determine from the evidence whether the outside entrance to the gallery was in fact safer than the inside passage which was used by the plaintiff. There is evidence that the outside entrance was reached by climbing ladders and walking along a "catwalk" or platform which was obstructed by materials and water. The plaintiff had not been told of that means of access. We may not hold, under the circumstances of this case, that the plaintiff was guilty of contributory negligence in failing to use that outside passage to the gallery.

The appellants contend that plaintiff was acting as a general inspector for the Bureau of Reclamation, whose duty required him to investigate and report all defects of appliances and that he may therefore not complain of the defect in the security of the bulkhead which he should have discovered. We think there is no merit in that contention. The implied findings of the jury infer that it assumed he was not a general inspector, but that he was only employed to obtain temperatures of the concrete walls. He did report the fact that the ladder was too short to reach the gallery and that the opening in the lattice bulkhead was not as large as it might have been for easy access to that gallery. But he did not discover that the structure was insecure. He said that he supposed it was securely fastened to the walls by means other than the mere use of the wedges. There is evidence to support the implied findings in that regard.

We may not hold as a matter of law that the verdict which was returned in this case is excessive. The plaintiff was rendered unconscious from the fall to the concrete floor of the shaft. The evidence indicates that his spine was fractured in several places. One vertebra was chipped. The

spinal cord was injured. His pelvis was broken. His right index finger was fractured. His elbow was punctured. He received numerous bruises and contusions, and severe nervous shock. He suffered great pain. He still has pain in his neck, spine, lumbar region and muscles of the lower limbs. He is unable to turn his head or body without pain. The movements of his head, body and limbs are restricted. He is unable to perform hard manual work. He is afflicted with headache and dizziness. The physician testified that he was permanently and seriously injured, and that his condition was likely to grow worse. The doctor said:

"His condition is permanent. . . . I think that it will probably get worse. . . . I don't think he will be able to do hard work, no manual labor. I think he probably can do light work but I don't think he will be able to resume his usual occupation."

 The rule is well established that the amount of a verdict for damages for personal injuries is largely within the sound discretion of the jury, and that it may not be interfered with unless it appears from the record that it is the result of the passion or prejudice of the jurors. (*Walker* v. *Adamson,* 9 Cal.2d 287 [70 P.2d 914]; *Scaletta* v. *Silva,* 52 Cal.App.2d 730, 739 [126 P.2d 898]; *Armstrong* v. *Ford,* 30 Cal.App.2d 347, 351 [86 P.2d 385]; *Rannard* v. *Harris,* 121 Cal.App. 281 [8 P.2d 864]; *Even* v. *Pickwick Stages System,* 109 Cal.App. 636, 641 [293 P. 700]; 20 Cal.Jur. § 65, p. 101.) In the present case there is no indication that the verdict was not the result of the honest convictions of the jurors. It does not appear that it was the result of passion or prejudice on their part. We may therefore not hold that the amount is excessive.

 We have carefully examined the instructions which were given to the jury and refused, and find no substantially erroneous or prejudicial error therein. The jury was very fully and fairly charged upon all essential issues in the case. The defendants offered forty instructions, fifteen of which were given to the jury. The appellants chiefly challenge plaintiff's instructions numbers 26 and 27, which were given to the jury. The first one correctly defines a hidden or latent defect. The other one merely declares that if the jury finds that the plaintiff's injuries were proximately caused as a result of latent defects of the ladder or the bulkhead, and

that they were owned or maintained for use of the plaintiff in his assigned work, by the Pacific Constructors, Inc., or by that company and the Bureau of Reclamation, jointly, and that plaintiff had no knowledge of such latent defects, and possessed no information or facts with relation thereto which would place a reasonable person on inquiry, he would not be required to conduct an independent investigation to discover the latent defects. That instruction appears to contain a correct statement of the law, under the circumstances of this case. There is no substantial evidence that the defect in the method of fastening the bulkhead to the side walls of the gallery was either visible or obvious. The insecurity of that bulkhead was concealed by the presence of the wooden wedges inserted between the ends of the horizontal timbers and the concrete walls. The plaintiff had no knowledge of the fact that the timbers were constructed of green lumber or that they might shrink. We think those instructions were neither erroneous nor prejudicial. Certainly they do not constitute reversible error. The jury could not have been misled or prejudiced thereby.

 Finally, the appellants charge plaintiff's attorney with prejudicial misconduct in their opening statement to the jury and in the examination of witnesses in the course of the trial. The first challenged statement was made by one of plaintiff's attorneys in his opening statement to the jury. It was in the nature of an outline of evidence which he expected to adduce. It related to plaintiff's reemployment after he had partially recovered from his injuries. The attorney said the fact that plaintiff had been given "a soft job," and was then "earning more money," might induce the defendants to "come in here and tell this jury that this man has not lost anything" on account of his injuries. That statement anticipated a possible defense, and it may have been improper. The court properly stated that it was mere argument, and directed the jury to disregard it. In examination of plaintiff at the trial, the defendants having brought out the fact that plaintiff was then employed in doing some light work for the construction company, his attorney asked him on redirect examination if he had any assurance of how long he might expect to keep that job. Defendants objected to that question. In replying to argument in support of that objection, plaintiff's attorney asserted that the bureau was

acting as a "Santa Claus" in providing that job for the plaintiff. That assertion was assigned as prejudicial misconduct. The court promptly suggested that it was mere argument and not evidence, and, in effect, directed the jury to disregard the statement. We think it was harmless. In his closing argument to the jury, one of plaintiff's attorneys referred several times to the fact that the Pacific Constructors, Inc., held a "Thirty-five million dollar" contract to construct the Shasta Dam, the inference apparently being that it could therefore afford to exercise due care in supplying and maintaining safe appliances for the protection of the workmen. Somewhat similar statements were made at least four times. The first time the statement was made defendants' attorney objected on the ground that the consideration for the contract was not in evidence. Plaintiff's attorney correctly replied that the contract which was admitted in evidence "provides that it is a thirty-five million dollar contract." Defendants' attorney then said the contract price was not an issue, and assigned the statement as prejudicial misconduct. Each similar reference was objected to by the defendants. Each time the court directed the jury to disregard such statements made by counsel in his argument "that is not borne out by the evidence, or is not material to the case." Once the court instructed the jury in that regard to "disregard anything except what refers to this particular case, and not to any other case." We are unable to perceive the logical application of the repeated references to the "thirty-five million dollar contract." We assume that statement was made in an excess of zeal. It is true that the contract, which was in evidence, disclosed that fact. The attorney merely called attention to a fact which was in evidence. We assume he may have applied that fact illogically. The legal requirement that an employer or an invitor shall exercise reasonable care to protect workmen or invitees against injuries does not depend on the magnitude of the contract or even the profits therefrom. But there is no rule of law which requires attorneys to be absolutely logical in their arguments. While we do not approve the repeated references to the magnitude of the contract, we may not assume that the emphasizing of that fact which was in evidence would mislead or prejudice the jury. In view of the repeated cautionary instructions of the court on that gen-

eral subject, we are of the opinion those remarks do not constitute reversible error.

For the reasons previously assigned, the motions for judgment notwithstanding the verdict were properly denied.

The judgment and the orders are affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied April 25, 1945, and appellants' petition for a hearing by the Supreme Court was denied May 24, 1945.